No. 18        March 30, 2017        241

IN THE SUPREME COURT OF THE
STATE OF OREGON

In the Matter of the Compensation of
Royce L. Brown, Sr., Claimant.

Jesse BROWN,
Personal Representative of
the Estate of Royce L. Brown, Sr., Petitioner,
*Respondent on Review,*

*v.*

SAIF CORPORATION
and Harris Transportation Company, LLC,
*Petitioners on Review.*

(WCB No. 11-02146; CA A151889; SC S062420)

On review from the Court of Appeals.*

Argued and submitted May 11, 2015.

Julie Masters, Appellate Counsel, SAIF Corporation, Salem, argued the cause and filed the briefs for petitioners on review.

Julene M. Quinn, Portland, argued the cause and filed the brief for respondent on review.

Jerald P. Keene, Oregon Workers' Compensation Institute, LLC, Oceanside, filed the brief for *amici curiae* Associated Oregon Industries and Oregon Self Insurers Association.

James S. Coon, Swanson, Thomas, Coon & Newton, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

_____

    *  Judicial review from Opinion and Order from Workers' Compensation Board, dated June 12, 2012. 262 Or App 640, 325 P3d 834 (2014).

Before Balmer, Chief Justice, and Kistler, Walters, Landau, Baldwin, and Brewer, Justices.**

LANDAU, J.

The decision of the Court of Appeals is reversed. The final order of the Workers' Compensation Board is affirmed.

_____

** Linder, J., retired December 31, 2015 and did not participate in the decision of this case. Nakamoto, J., did not participate in the consideration or decision of this case.

**LANDAU, J.**

The issue in this workers' compensation case is whether claimant is entitled to benefits for his "combined condition" claim. Under ORS 656.005(7)(a)(B), a "combined condition" exists when an "otherwise compensable injury" combines with a preexisting condition, and the otherwise compensable injury remains the major contributing cause of that combined condition.[1] In this case, claimant filed— and his employer's insurer, SAIF Corporation, initially accepted—a claim for a lumbar strain combined with pre-existing lumbar disc disease and related conditions. SAIF later denied the combined condition claim on the ground that the lumbar strain had ceased to be the major contributing cause of the combined condition. Claimant objected. He did not contest that his lumbar strain had ceased to be the major contributing cause of his combined condition. Instead, he argued that the otherwise compensable injury was not limited to the lumbar strain that SAIF had accepted as part of his combined condition claim. In claimant's view, an "otherwise compensable injury" within the meaning of ORS 656.005(7)(a)(B) refers not just to the condition that SAIF accepted, but also includes any other conditions not accepted that might have resulted from the same work-related accident that caused the lumbar strain, and that larger group of work-related conditions continues to be the major contributing cause of his combined condition. As a result, claimant contended that an employer cannot close a combined condition claim if any of those nonaccepted conditions remain the major cause of the combined condition claim.

The Workers' Compensation Board rejected claimant's argument and upheld SAIF's denial of claimant's combined condition claim, concluding that existing precedent defined the "otherwise compensable injury" component of combined conditions to consist of the condition or conditions that the employer has accepted as compensable. The Court of Appeals reversed, acknowledging that its holding was "potentially at odds" with existing precedents from both that

---

[1] The statute refers to a "disability of the combined condition or *** the need for treatment of the combined condition." ORS 656.005(5)(7)(a)(B). Throughout this opinion we use "combined condition" as the same shorthand phrase for both.

court and this one. *Brown v. SAIF*, 262 Or App 640, 653, 325 P3d 834 (2014). It nevertheless concluded that those precedents were either distinguishable or should be reconsidered. *Id*. For the reasons that follow, we conclude that the Court of Appeals erred and that the Workers' Compensation Board was correct.

## I.  FACTS

The relevant facts are not in dispute. Claimant had a history of back problems dating back to 1993, when he was first treated for back problems. He started work for employer as a truck driver in 2002. That same year, he slipped and fell on his buttocks in a restaurant bathroom. A lumbar spine X-ray taken shortly after showed degenerative changes.

In 2006, claimant went to a hospital emergency room complaining of back pain over the preceding month. He was referred to an orthopedist, Dr. Matthew Gambee, who ordered an MRI. The MRI revealed an L4-5 disc protrusion with compression of the L4 nerve root, along with a number of degenerative changes. Dr. Gambee performed an epidural steroid injection, but that provided no sustained relief.

Claimant was referred to a neurosurgeon, Dr. Hoang N. Le, who performed surgery that included a right-side L4-5 decompression, discectomy, and transforaminal lumbar interbody fusion. In April 2007, claimant reported having no back or leg pain, and he was released to full duty. Over the course of the next year and a half, claimant performed his regular duties as a truck driver. He experienced some ongoing numbness in two toes of his right foot, and he had occasional minor back pain.

On December 14, 2008, while hanging heavy truck-tire chains under his truck, claimant felt a sudden burning with sharp pain in his lower back that radiated into his right leg. The next day, he went to a hospital emergency room with the same complaints. The treating doctor ordered X-rays of claimant's back, which showed no evidence of acute bone or joint abnormality. So the doctor placed him on modified duty restrictions and prescribed pain medications.

Several days later, claimant saw Dr. Susan Davis, who diagnosed a lumbar strain secondary to the December 14, 2008, work injury. She placed claimant on light duty restriction, prescribed conservative treatment, and referred claimant to physical therapy. Claimant submitted a workers' compensation claim for his lower back pain. SAIF accepted a claim for a disabling "lumbar strain." The notice of acceptance included a notice that, should claimant's condition worsen, he could be entitled to additional benefits for an aggravation claim.

Claimant continued to feel pain in his right hip and down his right leg. Dr. Davis ordered a CT scan of the lumbar spine, which revealed L4-5 right marked foraminal stenosis related to spondylolisthesis and spurring. Dr. Davis referred claimant to an occupational medicine specialist, Dr. Fernando Proano, who referred claimant back to Dr. Le for a neurosurgical consultation.

Meanwhile, Dr. Proano examined claimant in June 2009. He diagnosed a lumbar strain combined with preexisting lumbar disc disease and noted that claimant's work accident had aggravated the preexisting conditions. Dr. Proano again examined claimant in August 2009. He reported that, at that point, claimant's lumbar strain had reached medically stationary status with no impairment findings due to the strain. Based on Dr. Proano's report, SAIF issued a notice of closure that closed the claim for lumbar strain and awarded no permanent disability benefits for the accepted lumbar strain.

Claimant continued to experience pain and returned to Dr. Le, who then performed a "right L4-5 instrumentation removal and redo decompression of the L4 nerve root." But claimant experienced no significant relief from the surgery.

In January 2010, claimant filed a combined condition claim for "lumbar strain combined with lumbar disc disease and spondylolisthesis." SAIF initially resisted, but, after some litigation, it accepted the combined condition claim, specifying that it was accepting, in addition to the originally accepted lumbar strain, a combined condition consisting of "lumbar strain combined with preexisting lumbar disc disease and spondylolisthesis."

Approximately two months later, SAIF ordered an independent medical examination by Dr. Edmund Frank. He opined that the lumbar strain combined with the lumbar disc disease and spondylolisthesis had resolved and that the work-related lumbar strain had ceased to be the major contributing cause of claimant's disability and need for treatment. Dr. Frank concluded that claimant's symptoms related to right L5 radiculopathy secondary to the preexisting spondylolisthesis at L4-5, the fusion-related pseudoarthritis at L4-5, and the scarring of the nerve root, all of which were unrelated to claimant's work-related lumbar strain. SAIF then issued a denial of claimant's combined condition claim as of the date that his lumbar strain had become medically stationary, on the ground that, at that point, the accepted lumbar strain had ceased to be the major contributing cause of claimant's combined condition.

Claimant requested a hearing on the denial of the combined condition claim. At the hearing, SAIF offered the testimony of Dr. Proano that the accepted lumbar strain had ceased to be the major contributing cause of claimant's combined condition. Claimant did not challenge that evidence. Instead, he argued that the original December 14, 2008, work injury resulted not only in lumbar strain, but also in worsening his preexisting conditions. In claimant's view, the combined condition claim includes not only the accepted lumbar strain, but the worsening of the preexisting conditions as well. Both the lumbar strain and the worsening of preexisting conditions, he argued, should be considered the "otherwise compensable injury," which he asserted continues to be the major contributing cause of his combined condition.

The administrative law judge rejected claimant's argument and upheld SAIF's denial. The ALJ noted claimant's argument that the December 14, 2008, work injury had worsened his preexisting conditions, but concluded that the argument was beside the point, as claimant had not filed a claim for such worsening. The ALJ noted that claimant's combined condition claim was for the accepted lumbar strain and the preexisting conditions only. Under the circumstances, the ALJ concluded, the "otherwise compensable injury" is "limited to the lumbar strain."

Claimant sought review by the Workers' Compensation Board, which adopted and affirmed the ALJ's order with the added observation that the denial of claimant's combined condition claim was compelled by its own case law, as well as case law from the Court of Appeals. Board Member Weddell concurred, writing separately to explain that, although the Board's decision was indeed compelled by existing precedent, in her view that precedent should be reexamined. Weddell asserted that the existing precedent was contradicted by several cited excerpts from the legislative history of the 1990 and 1995 amendments that are reflected in current workers' compensation statutes. She also observed that the existing precedent has the potential to leave claimants without remedies in certain circumstances.

The Court of Appeals took up the concurrence's suggestion and reversed the Board. The court concluded that ORS 656.005(7)(a)(B), which describes a combined condition as a combination of an "otherwise compensable injury" and a preexisting condition, is "injury-incident focused." 262 Or App at 646. Thus, the court explained, the statute "requires a determination that there was an injury incident" that combines with a preexisting condition to create the combined condition claim. *Id*. at 646-47. That "injury incident" is not limited to particular resulting medical conditions, much less particular resulting medical conditions that have been accepted, the court continued. *Id*. at 648. In the view of the Court of Appeals, "there is no statutory provision that expressly links the compensability of a combined condition to its relationship to an 'accepted condition.'" *Id*. The court found confirmation of the "injury-incident focus" of the statute in several excerpts from the legislative history of amendments to the statute in 1990 and 1995, *id*. at 648-50, which it read to reveal a legislative intent that an employer's acceptance of a claim "'does not have any negative consequences for the worker.'" *Id*. at 650 (emphasis deleted; quoting statement of Representative Kevin Mannix).

In reaching the conclusion that the "otherwise compensable injury" component of a combined condition claim is not limited to accepted conditions, the Court of Appeals said, "[w]e recognize that our conclusion is potentially at

odds with what we and the Supreme Court have said" in other cases. *Id*. at 653. The court nevertheless suggested that those contrary statements are better viewed as *dicta* or as inadequately considered without benefit of the legislative history on which it now relied. *Id*. In the end, the court reversed and remanded the case for reconsideration in light of its broader reading of the nature of the "otherwise compensable injury" to include other medical conditions related to the "injury incident," such as the worsening of preexisting conditions, but which were not within the scope of the work-related conditions that SAIF accepted. *Id*. at 656.

We allowed review to address the proper interpretation of ORS 656.005(7)(a)(B) and related statutes. While review was pending, claimant passed away. The court was notified that claimant's estate intended to substitute a personal representative, once the personal representative had been qualified by the probate court. We held the case until August 11, 2016, when we received a motion to substitute Jesse Brown as the petitioner on review. *See Sather v. SAIF*, 357 Or 122, 136, 347 P3d 326 (2015) (a "person" entitled to workers' compensation benefits includes a deceased worker's estate). The motion was allowed. In the balance of this opinion, when we refer to "claimant," we refer to the personal representative of claimant's estate.

## II.   ANALYSIS

On review, SAIF argues that the Court of Appeals has significantly misconstrued the requirements of ORS 656.005(7)(a)(B) and departed from the way courts have uniformly interpreted the statute for the last 15 years. In SAIF's view, "the notice of acceptance signifies the scope of a compensable injury" for the purposes of a previously accepted combined condition claim. SAIF contends that the Court of Appeals, in reaching a contrary conclusion, ignored a number of statutory provisions that expressly equate the "otherwise compensable injury" with an "accepted condition" in this circumstance. Moreover, SAIF argues, the Court of Appeals relied on bits of legislative history removed from their context, giving those bits of history significance that is at odds with what the legislature was actually attempting to accomplish.

For his part, claimant argues that the Court of Appeals was essentially correct in construing the "otherwise compensable injury" as "the work accident and all of the effects that flow from it," not a particular medical condition. Claimant's argument rests on the assertion that the relevant statutes "do[] not expressly (or impliedly) include the requirement of a 'condition.'" Rather, he says, they refer to a compensable "injury," which can be understood to apply to an on-the-job incident that results in a medical condition. Claimant urges us to give special attention to the legislative history of the 1990 and 1995 amendments to the statutes, as did the Court of Appeals. In claimant's view, that history reveals that the legislature did not intend the acceptance of a claim to have any sort of limiting effect on a claimant's rights.

We are thus confronted with an issue of statutory construction. We resolve that issue in accordance with the rules of interpretation described in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or 160, 171-73, 206 P3d 1042 (2009). Among those that guide our construction of the statutes at issue in this case is the essential principle that the best evidence of what the legislature intended a statute to mean is the wording of the statute that it adopted into law. As this court explained in *Gaines*,

> "[o]nly the text of a statute receives the consideration and approval of a majority of the members of the legislature, as required to have the effect of law. Or Const, Art IV, § 25. The formal requirements of lawmaking produce the best source from which to discern the legislature's intent, for it is not the intent of the individual legislators that governs, but the intent of the legislature as formally enacted into law[.]"

346 Or at 171. With that in mind, we turn to the statutes at issue in this case.

A.   *Statutory background*

We begin with some background for context. Under Oregon's workers' compensation law, employers are required to provide compensation to workers who suffer "compensable

injuries." ORS 656.017(1). A "compensable injury" is a term of art, meaning, with certain limitations and exceptions:

> "an accidental injury, or accidental injury to prosthetic appliances, arising out of and in the course of employment requiring medical services or resulting in disability or death; an injury is accidental if the result is an accident, whether or not due to an accidental means, if it is established by medical evidence supported by objective findings[.]"

ORS 656.005(7)(a)(A). A "compensable injury," for example, does not include "[i]njury to any active participant in assaults or combats which are not connected to the job assignment and which amount to a deviation from customary duties." ORS 656.005(7)(b)(A). Similarly, it does not include "[i]njury incurred while engaging in or performing or as the result of engaging in or performing, any recreational or social activities primarily for the worker's personal pleasure." ORS 656.005(7)(b)(B).

A worker who has suffered a compensable injury must file a "[n]otice of an accident resulting in an injury or death" immediately after the accident. ORS 656.265(1)(a). The worker is then entitled to file a claim for workers' compensation benefits. Within 60 days of the filing of that claim, the employer is required to provide a written notice of acceptance or denial of that claim. ORS 656.262(6)(a). Merely paying or providing compensation is not sufficient to constitute acceptance of a claim. ORS 656.262(10). There must be a written notice of acceptance of a claim, which is required to "[s]pecify what conditions are compensable." ORS 656.262(6)(b)(A); *see also* ORS 656.267(1) (employer's notice of acceptance is sufficient if it "reasonably apprises the claimant and the medical providers of the nature of the compensable conditions"). If a claimant believes that such a written notice of acceptance incorrectly omits a compensable condition, he or she may object at any time and file a claim for the omitted condition. ORS 656.262(6)(d).

Ordinarily, it is the claimant's burden to establish that a particular injury is compensable. ORS 656.266(1). The claimant must prove that the work-related injury is a "material" cause of the disability or the need for treatment.

*See SAIF v. Sprague*, 346 Or 661, 663-64, 217 P3d 644 (2009) (discussing claimant's burden). There are, however, at least two exceptions to that burden.

The first such exception is triggered if an "otherwise compensable injury"—that is, an injury that would otherwise be compensable but for the exception—combines with a preexisting condition to create what is known as a "combined condition":

> "If an otherwise compensable injury combines at any time with a preexisting condition to cause or prolong disability or a need for treatment, the combined condition is compensable only if, so long as and to the extent that the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

ORS 656.005(7)(a)(B). In such combined condition cases, the burden is altered in two respects. First, if a compensable injury combines with a preexisting condition, it is compensable only if the *major* contributing cause—not just the material cause—of the resulting combined condition is the compensable injury. ORS 656.266(2)(a). Second, it is the employer's burden to establish that the work-related compensable injury is *not* the major contributing cause of the combined condition. *Id.*; *see also Hopkins v. SAIF*, 349 Or 348, 351-52, 245 P3d 90 (2010) (describing burden in combined condition cases).

If an employer accepts a combined condition claim, that acceptance does not preclude the employer from later denying the claim, should circumstances change so that the otherwise compensable condition is no longer the major contributing cause of the combined condition. ORS 656.262(6)(c). If the employer believes that to be the case, it is required to notify the claimant in writing that the "accepted injury" is no longer the major contributing cause of that combined condition:

> "Once a worker's claim has been accepted, the insurer or self-insured employer must issue a written denial to the worker when the accepted injury is no longer the major

contributing cause of the worker's combined condition before the claim may be closed."

ORS 656.262(7)(b); *see also* ORS 656.268(1)(b) (employer authorized to close combined condition claim if "[t]he accepted injury is no longer the major contributing cause" of the combined condition).

The second exception to the ordinary burden of persuasion applies in "consequential condition" cases:

> "No injury or disease is compensable as a consequence of a compensable injury unless the compensable injury is the major contributing cause of the consequential condition."

ORS 656.005(7)(a)(A). In such cases, although the allocation of the burden has not changed, the ordinary material contributing cause standard no longer applies; the claimant must establish that the major contributing cause of the consequential condition was the work-related compensable injury.

Workers' compensation benefits may include medical services. For an ordinary compensable injury, the claimant is entitled to compensation for medical services for conditions "caused in material part" by the compensable injury. ORS 656.245(1)(a). For consequential and combined conditions, the claimant is entitled to compensation for "only those medical services directed to medical conditions caused in major part by the injury." *Id.*

One final bit of statutory context deserves mention. If a claimant's compensable injury becomes "medically stationary," the employer is authorized to close the claim and, if appropriate, award permanent disability. ORS 656.268(1)(a). After a claim has been closed, if the claimant's condition resulting from the original injury gets worse, the claimant may file an "aggravation" or "worsened condition" claim. ORS 656.273.

B.  *Analysis of parties' contentions*

With the benefit of that context, we turn to the parties' arguments. The principal issue concerns the meaning of the "otherwise compensable injury" component of a combined condition claim. SAIF takes the position that,

in this context, the "otherwise compensable injury" refers to the medical condition that an employer or insurer has previously accepted. Claimant argues that nothing in the wording of ORS 656.005(7)(a) expressly qualifies the phrase "otherwise compensable injury" in the limited way that SAIF suggests. In claimant's view, the term does not refer to a medical condition at all; rather, it refers to an event—"the work accident"—as well as "all of the effects that flow from it." Thus, as claimant sees it, an "otherwise compensable condition" includes not just the condition that SAIF previously accepted, but also any worsening of his preexisting conditions that may later be found to have been caused by the original work accident.

Both parties contend that their arguments are supported by the "plain text" of the statute. In that respect, both parties are mistaken. There is little that is "plain" about this state's workers' compensation statutes, certainly with respect to the terminology at issue in this case. In fact, there appears to be a tendency on the part of the legislature to use a number of different terms in not altogether consistent fashion, sometimes treating them as essentially synonymous and at other times treating them as signifying different things.

Examples are legion. ORS 656.005(7)(a)(A), for instance, sets out the elements of a consequential condition claim and expressly equates an "injury or disease" with a "condition," as not even claimant contests. On the other hand, ORS 656.273(1) provides for compensation for a "worsened condition[] resulting from the original injury," signifying a possible distinction between the two terms. Still other statutes can be read either way. ORS 656.386(1)(b)(A), for example, refers to an employer's refusal to pay benefits because "the injury or condition for which compensation is claimed is not compensable." Even more ambiguous is ORS 656.308(1), which provides that, when a worker sustains a "compensable injury," the responsible employer remains obligated to pay benefits relating to "the compensable condition," unless the worker sustains a new "compensable injury" involving the same "condition." In a similar vein, some workers' compensation statutes refer

to acceptance of a "claim" and specify a process for "claim acceptance," *e.g.*, ORS 656.262(6)(a). Other provisions within the workers' compensation statutes, however, refer to acceptance of an "injury," *e.g.*, ORS 656.262(7)(b), or acceptance of a "condition," *e.g.*, ORS 656.247(4)(b).

Compounding those ambiguities is the fact that some of the terms themselves are reasonably capable of more than one meaning. The term "injury," for example, plausibly may refer either to an event or to a resulting condition. *Webster's* defines the noun both as "an act that damages, harms, or hurts" and as the "hurt, damage, or loss sustained." *Webster's Third New Int'l Dictionary* 1164 (unabridged ed 2002).[2] In other words, an "injury" can refer to an incident that causes or results in harm, or it can refer to the harm itself.

Under the circumstances, the resolution of the dispute in this case will not turn on whether an interpretation of one provision is inconsistent with another in the workers' compensation statutes. Regardless of what we say about the statutes at issue in this case, doubtless at least one provision could be cited that arguably contradicts that interpretation in one way or another. That is so whether we adopt the construction advanced by SAIF, or by claimant, or by any of the *amici curiae* that have proposed their own interpretations to the court. So we turn instead to the relevant statutes in context to determine the interpretation that best fits the statutory scheme *as a whole*. *See Lane County v. LCDC*, 325 Or 569, 578, 942 P2d 278 (1997) ("[W]e do not look at

---

[2] Interestingly, *Webster's* appears to be the only dictionary that defines the word "injury" to include not just harm itself, but also an event that causes or results in such harm. The *American Heritage Dictionary*, for example, defines the term as "damage or harm done to or suffered by a person *** a particular form of hurt, damage, or loss: *a leg injury*." *The American Heritage Dictionary of the English Language* 904 (5th ed 2011). *Black's* likewise defines the word solely in terms of the harm itself. It specifies that the word "injury" refers to "[a]ny harm or damage." *Black's Law Dictionary* 801 (8th ed 2004). It goes on to explain that the related term "accidental injury" is "[a]n injury resulting from external, violent, and unanticipated causes; esp., a bodily injury," and defines, in turn, "bodily injury" to refer to "[p]hysical damage to a person's body." *Id.* The more limited definition of the term does not appear to be a modern development. The earliest edition of *Black's*, for example, defines the term in the same way: "any wrong or damage done to another either in his person, rights, reputation, or property." Henry Campbell Black, *A Dictionary of Law* 624 (1891).

one subsection of a statute in a vacuum; rather, we construe each part together with the other parts in an attempt to produce a harmonious whole.").

  1.  *Meaning of "injury"*

        We begin with the statutory word "injury," which claimant contends refers to a work "accident." We address the meaning of the term as used in ORS 656.005(7)(a) and its relevant context. We also review how the term has been interpreted in prior case law.

        a.  Textual analysis

        As we have noted, the term "injury" plausibly may refer either to an event or to a resulting condition. But, as this case so well illustrates, dictionaries do not necessarily supply the meaning of statutory terms. They supply reasonably possible meanings. Which of those reasonably possible meanings is the one that the legislature most likely intended is determined by how the terms are actually used in the relevant statutes. *See State v. Cloutier*, 351 Or 68, 96, 261 P3d 1234 (2011) ("Dictionaries, after all, do not tell us what words mean, only what words *can* mean, depending on their context and the particular manner in which they are used." (Emphasis in original.)). In that sense, dictionaries suggest what the legislature *could have* meant by the terms it enacted. In this case, the way that the term "otherwise compensable injury" is used in the relevant provisions of the workers' compensation statutes strongly suggests that, in this context, it refers to a particular medical condition—specifically, the one that the employer accepted as compensable.

        The use of the term "injury" in ORS 656.005(7)(a) suggests that it does not refer to an incident; rather, it refers to a medical condition that is the *result* of an accidental incident. It does so in several ways. First, it refers to the joining of an "otherwise compensable injury" and a preexisting condition as a "combined condition," strongly suggesting that there are two separate "conditions" that combine to form the "combined condition" claim. ORS 656.005(7)(a)(B). And, in fact, that is the way the courts have referred to "combined condition" claims for years. *See, e.g., Luckhurst v. Bank of*

*America*, 167 Or App 11, 16-17, 1 P3d 1031 (2000) ("[I]n order for there to be a 'combined condition,' there must be two conditions that merge or exist harmoniously."); *Multifoods Specialty Distribution v. McAtee*, 164 Or App 654, 662, 993 P2d 174 (1999), *aff'd*, 333 Or 629, 43 P3d 1101 (2002) ("[A] combined condition may constitute either an integration of two conditions or the close relationship of those conditions.").

Second, as we just noted, the same statute sets out the elements of a consequential condition claim and expressly equates an "injury or disease" with a "condition," not an event. ORS 656.005(7)(a)(A). It provides that an "injury or disease" is not compensable as a consequential condition unless the major contributing cause of that "condition" was the compensable injury. *Id*.

Third, the same statute defines a "compensable injury" as "an accidental injury, or accidental injury to prosthetic appliances." ORS 656.005(7)(a). An "injury" to a prosthetic appliance is not an event. It is instead the *result* of an accidental event. Indeed, ORS 656.005(7)(a) specifically refers to an "accidental injury" as one that is the "result" of an accident. *See Mathel v. Josephine County*, 319 Or 235, 242, 875 P2d 455 (1994) ("[W]orkers make claims for *accidental injuries or occupational diseases*, not for the *causes* of those accidental injuries or occupational diseases." (Emphasis in original.)); *Olson v. State Ind. Acc. Com.*, 222 Or 407, 413, 352 P2d 1096 (1960) (focus of workers' compensation statute is to reach "any workman who undesignedly and unexpectedly suffered a hurt, without reference to whether the cause of the injury itself was accidental").[3]

---

[3] There is wording in *Mathel* to the effect that a "compensable injury" is an "event." 319 Or at 240. But the court used the term "event" in a different sense than claimant contends in this case. At issue in *Mathel* was the distinction between a "compensable injury" and an "occupational disease." Specifically, the issue was how to categorize a heart attack. The court concluded that an "injury" refers to a particular medical condition that occurs at a particular moment in time, one that is "sudden in onset," as opposed to a "disease," which is an ongoing condition that is gradual in onset. *Id*. at 240. In that sense, the court referred to a heart attack as a medical "event." *Id*. The court did not refer to the on-the-job incident that triggers an injury as the "compensable injury." To the contrary, the court disclaimed that reading of the statute. *Id*. at 241-42. In fact, we are aware of no prior decision of this court that refers to the "compensable injury" in ORS 656.005(7)(a)(B) as the "work accident" or the "injury incident." All of this court's prior cases refer to the "compensable injury" as the accepted medical condition.

Fourth, ORS 656.005(7)(a) refers to the "compensable injury" as having been determined by "medical evidence" supported by "objective findings." Ordinarily, we think of medical evidence as establishing medical conditions that result from events that occur, not as establishing a particular sequence of events that happened on the job. Indeed, the statutory definition of the sort of "objective findings" that are required to support "medical evidence" refers to "verifiable indications of injury or disease that may include, but are not limited to, range of motion, atrophy, muscle strength and palpable muscle spasm," ORS 656.005(19), clearly referring to the sort of evidence that is required to establish particular medical conditions. In fact, throughout the workers' compensation statutes, the term "medical evidence" refers to the evidence required to establish medical conditions such as the extent of impairment, ORS 656.726(4)(f)(B) (extent of impairment from disability must be "established by a preponderance of medical evidence based upon objective findings"), and the existence of an occupational disease, ORS 656.802(2)(d) (existence of occupational disease "must be established by medical evidence supported by objective findings"). *Cf.* ORS 655.510(2) (medical benefits for prison inmates for "injury" suffered as a result of authorized work must be established by "medical evidence" substantiated by "verifiable pathological indication of injury").

Finally, ORS 656.005(7)(b)(A) specifies that a "compensable injury" does not include an "[i]njury to an active participant in assaults or combats" that are not work-related. "Injury" thus refers to something that an individual suffers as a result of an assault or combat; it does not refer to the assault or combat itself. Likewise, ORS 656.005(7)(b)(B) states that a "compensable injury" does not include an "[i]njury incurred while engaging in or performing * * * any recreational or social activities primarily for the worker's personal pleasure." Again, the reference to "injury" is to a condition that is "incurred" as a result of a particular activity. An event is not "incurred." A condition is, as a consequence or result of an event.

That a compensable "injury" and the accident that may have caused it are separate things is further suggested by ORS 656.265, which, as we have noted, requires the

worker to provide "[n]otice of an accident resulting in an injury." For the purposes of the workers' compensation statutes, the "compensable injury" is not the accident itself; it is the condition that results from the accident. If the term "compensable injury" meant an accident, the statute would effectively refer to a "[n]otice of an accident resulting in an accident," which, obviously, makes no sense.

That a compensable "injury" refers to a particular medical condition, and not an accidental incident, is also confirmed by the statutory distinction between an accidental "injury" within the meaning of ORS 656.005(7)(a) and an occupational "disease" within the meaning of ORS 656.802(1)(a).[4] Both have long been understood to refer to medical conditions; the difference between them is the extent to which the condition is sudden in onset. *James v. SAIF*, 290 Or 343, 348, 614 P2d 565 (1981) (neurosis not an "injury" under workers' compensation law because condition "developed gradually rather than suddenly"); *Smirnoff v. SAIF*, 188 Or App 438, 446, 72 P3d 118 (2003) ("[T]he onset of the condition is the determining factor in deciding if a claim is for an injury or a disease.").

b.   Historical context and prior construction

Further supporting the distinction between the terms is the historical context, which includes earlier versions of the statute and judicial construction of them. *See Kohring v. Ballard*, 355 Or 297, 307-09, 325 P3d 717 (2014) (examining earlier versions of statute and judicial construction of those versions as statutory context). The reference to a compensable "injury" is a term that traces far back in the history of the state's workers' compensation law. The original 1913 statute required any workers' compensation claim to be filed within one year after the date a compensable "injury" occurred. General Laws of Oregon 1913, ch 112, § 27(d). It was later amended to provide that claims must be filed within three months of the date the "accident" occurred,

---

[4] ORS 656.802(1)(a) defines an "occupational disease" as any "disease or infection arising out of and in the course of employment caused by substances or activities to which an employee is not ordinarily subjected or exposed other than during a period of regular actual employment therein, and which requires medical services or results in disability or death."

provided that the State Industrial Accident Commission was given discretion to permit a filing within one year of the time the "accident" occurred. General Laws of Oregon 1935, ch 139, § (1)(e).

In *Landauer v. State Ind. Acc. Com.*, 175 Or 418, 154 P2d 189 (1944), a worker in a poultry farm attempted to dress an apparently "moribund turkey" when the turkey kicked her in the breast. Seven months later, a lump formed in the area where she had been kicked by the turkey. At that point, she filed a workers' compensation claim for breast cancer. The commission denied the claim as untimely, having been filed more than three months from the date of the accident. The claimant appealed and argued to this court that the statutory reference to "accident" referred to a "compensable injury." She argued that the "compensable injury" in her case consisted of the breast cancer, which did not appear until shortly before the filing of her claim, well within the three-month time limit. *Id.* 175 Or at 422-23.

This court rejected the claimant's argument that the terms "accident" and "compensable injury" are synonymous. The court extensively reviewed case law from other jurisdictions on the point, examining the statutes and case law from 20 different states with statutes comparable to Oregon's. The court concluded that the weight of authority—all but one state court—held that the terms have distinct meaning. Quoting approvingly from an Indiana appeals court decision, the court explained that, "'[t]he word "injury" in this section means the compensable disability and does not refer to the date of the accident from which the "injury" or compensable disability resulted.'" *Id.* at 427 (quoting *Farmers Mut. Liability Co. v. Chaplin*, 114 Ind App 372, 380, 51 NE2d 378 (1943)).[5] Thus, the distinction between a compensable

---

[5] The court further held that the commission had not abused its discretion in failing to permit the claimant nevertheless to file within one year of the accident, because the claimant had failed to make a showing by means of a verified statement, along with testimony from a qualified physician, that there was a causal connection between the accident involving the turkey and the later appearance of her breast cancer. *Landauer*, 175 Or at 452.

The court's decision in *Landauer* was not an anomaly. As the court recounted, all states but one concurred. In the years that followed, other state courts followed suit. *See, e.g.*, *Donaldson v. Calvert McBride Printing Co.*, 217 Ark 625, 629-30, 232 SW2d 651 (1950) ("We think there is a clear distinction between an

"injury" and the "accident" that caused it is nothing new. It has been around for many years.

Claimant and *amicus curiae* Oregon Trial Lawyers Association (OTLA) object that we cannot read the words "injury" and "condition" to mean the same thing for essentially four reasons. None of those contentions is availing.

First, claimant and OTLA argue that interpreting the two words synonymously violates the rule of construction that requires different words to be given different meanings. *See, e.g.*, *Dept. of Transportation v. Stallcup*, 341 Or 93, 101, 138 P3d 9 (2006) (use of different terms in real estate appraisal statute suggests that each was intended to have different meaning). As we explained in *State v. Lane*, 357 Or 619, 629, 355 P3d 914 (2015), however, the fact that the legislature has used different terms "does not, by itself, require the terms to have different meanings." Rather, "[s]uch 'rules' of interpretation are mere assumptions that always give way to more direct evidence of legislative intent." *Id.*[6]

---

accident and an injury."); *Davies v. Carter Carburetor, Division ACF Industries, Inc.*, 429 SW2d 738, 747-48 (Mo 1968) (an injury is not an accident, but what is caused by an accident); *Atlas Coal Corp. v. Scales*, 198 Okla 658, 660, 185 P2d 177 (1947) ("injury" refers to "the wrong or damage done to the person," while "accidental" "describes the noun by ascribing to 'injuries' a quality or condition of happening or coming by chance or without design").

[6] The "rule" of consistency is one that courts are especially careful not to apply too rigidly. As one leading treatise explains,

"more than most canons, this one assumes a perfection of drafting that, as an empirical matter, is not often achieved. Though one might wish it otherwise, drafters more than rarely use the same word to denote different concepts, and often (out of a misplaced pursuit of stylistic elegance) use different words to denote the same concept."

Antonin Scalia and Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 170 (2012).

In a number of prior decisions, this court has acknowledged that problem, concluding that the legislature sometimes uses different words to mean the same thing. In *State v. Gonzalez-Valenzuela*, 358 Or 451, 471, 365 P3d 116 (2015), for example, the court addressed the meaning of a statute that prohibited permitting a minor to enter or remain in a place where "unlawful activity involving controlled substances is maintained or conducted." The court noted that "[i]t is not clear that 'maintain' and 'conduct' must be given distinct definitions." *Id.* at n 13. Citing an earlier decision, *State ex rel Bloom v. State Bd. of Dental Examiners*, 96 Or 529, 190 P 338 (1920), the court noted that it had previously determined that, sometimes, there is no substantial distinction between the two terms. *Id.*

Courts in other jurisdictions likewise have long recognized the fact that sometimes statutes use the same terms to mean different things. *See, e.g., Atlantic*

        In this case, there is such direct evidence of legislative intent. The relevant statutes themselves treat the terms "injury" and "condition" as synonymous. Thus, for example, ORS 656.268(1)(b) provides that the employer may close a combined condition claim if the accepted "injury" is no longer the major contributing cause of the combined condition. The very next sentence of the same section goes on to state that,

> "[w]hen the claim is closed because the accepted *injury* is no longer the major contributing cause of the worker's combined or consequential condition or conditions, and there is sufficient information to determine permanent disability, the likely permanent disability that would have been due to the current accepted *condition* shall be estimated."

ORS 656.268(1)(b). In other words, when a combined condition is closed, impairment is determined with respect to the original accepted "condition," that is, the original accepted "injury." *See generally [Schleiss v. SAIF](link)*, 354 Or 637, 648, 317 P3d 244 (2013) (statute requiring apportionment of impairment due to accepted "condition" refers to the percentage of total impairment to which the compensable "injury" contributed); *[South Lane County Sch. Dist. #45-J3 v. Arms](link)*, 186 Or App 361, 366, 62 P3d 882, *rev den*, 335 Or 578 (2003) (holding that the term "accepted condition" in ORS 656.268(1)(b) refers to the "accepted injury").

        The statutes thus explicitly equate the term accepted "injury" with accepted "condition." Were claimant correct that an accepted "injury" is distinct from an accepted "condition" in this context, we would be required to conclude that the word "injury" has two different meanings within the same section of the statute. Even accepting the fact that there is some slippage in terminology within the workers' compensation statutes generally, we find it highly unlikely that the legislature would have intended a word to mean one thing in one sentence but another thing in the next sentence of the very same subsection. *See [Burke v. DLCD](link)*, 352 Or 428,

---

*Cleaners & Dyers v. United States*, 286 US 427, 433, 52 S Ct 607, 76 L Ed 1204 (1932) ("It is not unusual for the same word to be used with different meanings in the same act, and there is no rule of statutory construction which precludes the courts from giving the word the meaning which the Legislature intended that it should have in each instance.").

440, 290 P3d 790 (2012) (unlikely that legislature uses the same term in the same sentence to mean different things).

Second, claimant and OTLA argue that treating the words "injury" and "condition" as essentially synonymous undermines a basic sequence of events evident in several provisions of the workers' compensation statutes; namely, that injuries cause conditions. They point to statutes such as ORS 656.273(1), which provides "aggravation" rights for "worsened conditions resulting from the original injury." If an "injury" is a condition, they argue, such statutes anomalously refer to a condition resulting from an original condition.

The initial problem with that argument is that, as we have just noted, statutes such as ORS 656.268 explicitly treat the two terms as synonymous. Aside from that, if claimant and OTLA are correct, then by parity of reasoning, other statutes would make no sense, as well. ORS 656.262(3)(a), for instance, refers to "accidents" that may result in an "injury." If an "injury" already refers to an accident, then the statute anomalously would refer to an accident resulting from an accident. The phrase "accidental injury" also appears throughout the workers' compensation statutes. Similarly, the same statute refers to reports of the date, time, cause, and nature of "the accident and injuries." ORS 656.262(3)(a)(A). If the two terms mean the same thing, the statute makes little sense. *See, e.g.*, ORS 656.005(7)(a) (defining "compensable injury" to mean "accidental injury"); ORS 656.126(1) (referring to a worker receiving an "accidental injury" that arises out of and in the course of employment); ORS 656.204 (referring to death resulting from "accidental injury"); ORS 656.226 (the date of the "accidental injury"); ORS 656.307(1)(a)(C) (responsibility for payment of compensation for "one or more accidental injuries"). None of those references would make sense if the words "accident" and "injury" referred to the same things.

Third, claimant and OTLA argue that conflating the terms "injury" and "condition" confuses legal and medical causation. They contend that compensability of an "injury" is a legal question, referring to "an event in the course and scope of work," while compensability of

a particular "condition" is a medical one, determined by reference to medical evidence. As we noted earlier, however, ORS 656.005(7)(a) expressly refers to establishing the compensability of an "otherwise compensable injury" with "*medical* evidence" supported by "objective findings," a term elsewhere defined by statute to mean "verifiable indications of injury or disease that may include, but are not limited to, range of motion, atrophy, muscle strength and palpable muscle spasm," ORS 656.005(19). (Emphasis added.) Such evidence manifestly refers to medical conditions, not "events that occur in the course and scope of work."

Finally, OTLA argues that two other statutes use the words "injury" and "condition" clearly to mean different things. One such statute is ORS 656.308(1), which describes employer responsibility for compensation when a worker "sustains a new compensable injury involving the same condition." OTLA reasons that the use of the two different terms suggests that one must refer to an "accident" and the other to a particular medical condition that flows from that accident. OTLA's logic does not necessarily follow, though. The fact that the legislature used two different terms does not establish that the first of them—"injury"—refers to an on-the-job "accident," as OTLA contends. That is to say, even assuming that the use of the two different terms suggests different meanings, it does not follow that the legislature intended the terms to have the *particular* meanings that OTLA asserts.

In any event, there is nothing especially anomalous about one medical condition "involving" another. A medical diagnosis of "arthritis," for instance, can "involve" subsidiary medical conditions such as "inflammatory process or a degenerative condition of a soft tissue interface between two movable bones." *Hopkins*, 349 Or at 353; *see also Hutchings v. Amerigas Propane*, 275 Or App 579, 584, 365 P3d 636 (2015), *rev den*, 358 Or 833 (2016) (medical diagnosis of "cervical strain" can "involve" other medical conditions, including spondylosis of the cervical spine and damage to the long tracks of the cervical cord). OTLA offers no explanation for its assertion to the contrary.

The other statute that OTLA cites is ORS 656.386(1)(b)(A), which provides for attorney fees in some cases in which an "injury or condition" is accepted or denied. Here again, OTLA's conclusion does not necessarily follow from its premise. The fact that the statute refers to "injury or condition" does not suggest that the word "injury" refers to an on-the-job accident, only that it may mean something other than a "condition." Moreover, the fact that two words are expressed in the alternative does not by itself establish that the legislature intended them to mean different things. In legislation and in common speech, the disjunctive can be taken to mean alternatives that are equivalents. *Cf. Burke*, 352 Or at 435-36 (discussing multiple possible meanings of "or").

c.   Legislative history

Claimant argues that reading the workers' compensation statutes to equate the "injury" component of the statutory term "otherwise compensable injury" in ORS 656.005(7)(a)(B) with a medical "condition" is contradicted by the legislative history of the statute. In advancing that argument, claimant adopts the analysis of the Court of Appeals. The Court of Appeals, in turn, relied on two bits of legislative history concerning amendments to the workers' compensation statutes in 1990 and 1995, respectively. A careful review of those bits of legislative history, however, reveals that neither supplies support for the conclusions that claimant and the Court of Appeals draw from it. An examination of other legislative history that the Court of Appeals did not cite, moreover, tends to support the reading of the statute that we have determined that an analysis of its text so strongly suggests.

d.   1990 amendments: Statement of Jerry Keene

The Court of Appeals first cited remarks of Jerry Keene, a nonlegislator witness, who spoke in favor of the 1990 special-session legislation that introduced the combined condition provisions to the workers' compensation statutes. Or Laws 1990, ch 2, § 15. Keene, the court said, testified that the amendments "did not change 'the basic industrial injury definition'" in the existing law. 262 Or App

at 648-49 (quoting Tape Recording, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 8, side B (statement of Jerry Keene)). From that quote, the court concluded: "Thus, a proponent of the legislation indicated that there was no intent to change the *incident-based* definition of a 'compensable injury.'" 262 Or App at 649 (emphasis in original).

The problems with the court's reliance on that history are several. To begin with, it begs the question; that is, it assumes the very issue in contention. The court began with its assertion that the existing law defined a "compensable injury" to refer to an injury-producing incident, because the court found no statute to the contrary. It then invoked the legislative history for the conclusion that the legislature did not intend to change existing law. But the court's reliance on the legislative history of the 1990 amendments makes sense only to the extent that its assumption about the existing law was correct in the first place. As we have noted, it was not.

Aside from that, the Court of Appeals appears to have taken the legislative history out of context. The 1990 special session of the legislature was convened primarily to overhaul Oregon's workers' compensation laws. *See generally SAIF v. Drews*, 318 Or 1, 6-7, 860 P2d 254 (1993). In general, the focus of the new legislation was to make the state's workers' compensation system more cost-effective for employers and more efficient for workers. *See* Exhibit B, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990 (letter from the Governor's Workers' Compensation Labor Management Advisory Committee to Governor Neil Goldschmidt proposing changes to workers' compensation system to "control the costs of Oregon's workers' compensation program"); Exhibit P, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990 (summary fiscal analysis provided by Legislative Fiscal Office concerning "anticipated premium reductions" associated with the proposed changes); Exhibit F, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 7, 1990 (analysis provided by SAIF Corporation discussing cost savings under proposed changes); Tape Recording Joint Interim Special Committee on Workers' Compensation,

SB 1197, May 7, 1990, Tape 26, Side A (statement of Matt Hersee, Administrator, Workers' Compensation Division, Department of Insurance and Finance) (discussing anticipated savings that would result from proposed changes).

A key component of that legislative effort was to alter the standard of causation that applied to combined condition claims. *See Drews*, 318 Or at 7-8 (describing legislative history of adoption of "major contributing cause" standard). The imposition of that standard was intended, among other things, to reduce the number of combined condition or consequential condition claims. *See generally Errand v. Cascade Steel Rolling Mills, Inc.*, 320 Or 509, 525, 888 P2d 544 (1995) (reviewing legislative history of 1990 legislation, which "narrowed the definition of 'compensable injury' in ORS 656.005(7)(a) to reduce the number of injuries that would be compensated under the Workers' Compensation Law").

It was the new standard of causation that Keene addressed in the portion of the legislative history that the Court of Appeals cited. He did not testify that the proposed amendment "did not change 'the basic industrial injury definition'" of what constitutes a "compensable injury," as the court suggested. *Brown*, 262 Or App at 648-49. What he said was that the *standard of causation* that was currently "*in* the basic industrial injury definition" that applies not to a combined or consequential condition, but to the "initial industrial injury," had not changed, as the following, fuller quotation makes clear:

> "I would like to tell you that this language is far from ambiguous and uncertain as has been represented to you today. In fact, it does not change in one iota the standard of causation for the initial industrial injury. That language is arising out of and in the course of employment, which the courts translate as material contributing cause. More than negligible, less than half, but significant. That's the standard. Material contributing cause. It means any partial cause. That has not changed in the basic industrial injury definition. The only things we tried to do, or least I did in a similar effort was to attack conditions that were coming into the system that were there before the injury and things that were coming in after."

Tape Recording, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 8, Side B (statement of Jerry Keene). The cited 1990 legislative history thus provides no support for the conclusion that the "otherwise compensable injury" component of a combined condition refers to an "injury incident," and not the injury itself.

Perhaps more important, other legislative history appears to suggest that, when legislators and witnesses did address the issue, they often used the terms "injury" and "condition" synonymously. For example, during the same hearing from which the above quotation was taken, a legislator asked how the new law would work in the case of a worker whose back goes out when picking up something, and the worker already has degenerative arthritis. The legislator, Senator Bob Shoemaker, asked, "Would the traumatic injury itself be compensable?" *Id*. (statement of Sen Shoemaker). Keene replied:

> "Absolutely. It would be what's called the lit-up arthritic condition. And lighting up goes away. The trouble is, once you get even a partial contribution to a condition that degenerative arthritis is part of, any treatment directed at the arthritis stays in the system forever. There are lifetime medical rights. But under this scenario of this statute—what happens in most situations, the case never drops out of the system until the doctor is willing to say that that past injury plays absolutely no causal role in the treatment that he's rendering. And most doctors are very, very reluctant to say that. But in this scenario, once the doctor is willing to say well, that sprain, in and of itself has receded, and at this point what we've got is arthritis. That's what's going to be there."

*Id*. Thus, Keene explained that, when the medical condition—the work-related back sprain—ceases to be the major cause of the combined condition, the new law would apply.

Perhaps even more significant are the comments of Representative Kevin Mannix a few days later, addressing the subject of standards of causation under the new legislation and referring to whether work is the major contributing cause of a "given condition":

"In terms of the standard for the compensability of an industrial injury, we do not change the law to major contributing cause. *** We keep the standard for compensability of an industrial injury itself as whether work is a material contributing cause of a given *condition*."

Tape Recording, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 7, 1990, Tape 26, Side A (statement of Rep Mannix) (emphasis added); *see also* Tape Recording, Joint Interim Special Committee on Workers' Compensation, SB 1197, May 3, 1990, Tape 8, Side B (statement of Rep Jim Edmundson) (referring to "otherwise compensable injury" as "work-related condition" and "on-the-job condition").

### e. 1995 Amendments: Statement of Representative Mannix

The second piece of legislative history on which the Court of Appeals relied, concerns the comments of Representative Mannix regarding proposed amendments intended to "reinforce" some of the changes that had been made in the 1990 legislation. Tape Recording, Senate Committee on Labor and Government Operations Committee, SB 369, Jan 30, 1995, Tape 15, Side A (statement of Rep Mannix).[7] In the course of summarizing the proposed amendments, Mannix more than once referred to the "compensable condition" in the existing law as "the injury incident." *Id.*; Tape Recording, House Committee on Labor, SB 369, Mar 1, 1995, Tape 38, Side B (statement of Rep Mannix) ("work incident"). The Court of Appeals found those statements to be especially strong evidence of the legislature's intention to maintain the focus on the "injury incident," and not the medical condition that the employer accepted. *Brown*, 262 Or App at 649-50.

---

[7] The proposed changes to ORS 656.005(7)(a)(B) were as follows (with new material in bold and deleted material in bracketed italics):

"(B) If [*a*] **an otherwise** compensable injury combines **at any time** with a preexisting disease or condition to cause or prolong disability or a need for treatment, the [*resultant*] **combined** condition is compensable only **if, so long as and** to the extent that the otherwise compensable injury is [*and remains*] the major contributing cause of the disability **of the combined condition** or **the major contributing cause of the** need for treatment **of the combined condition**."

Or Laws 1995, ch 332, § 1.

Again, the court's reliance on the legislative history is problematic for a number of reasons. At the outset, it appears that Representative Mannix was not addressing the significance of the proposed amendments; rather, he was referring to the meaning of the "compensable injury" component of a combined condition claim under law that had been enacted several legislative sessions earlier. Ordinarily, a legislator's views on the meaning of existing law are of little, if any, probative value. As this court explained in *DeFazio v. WPPSS*, 296 Or 550, 561, 679 P2d 1316 (1984), "[t]he views legislators have of existing law may shed light on a new enactment, but it is of no weight in interpreting law enacted by their predecessors." *See also Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 327, 337 P3d 768 (2014) ("What later legislators thought is irrelevant to what an earlier legislature intended with an enactment[.]").

Moreover, a more complete review of the legislative history reveals that Mannix at other times during the enactment process referred to a compensable "injury" not as an event or incident, but as "the work-related condition." When introducing the amendments to the Senate Committee on Labor and Government Operations, for example, Mannix explained that the bill

> "[p]ermits a claim denial when preexisting conditions are the major cause of the need for treatment. This gets back to where we were in our discussion before: the major contributing cause, preexisting conditions and how long you have to keep providing care for those when you had an industrial injury. This permits a denial of further responsibility after the *work-related condition* has been treated to the extent that the work event is no longer the major cause of disability or the need for treatment."

Tape Recording, Senate Committee on Labor and Government Operations, SB 369, Jan 30, 1995, Tape 15, Side B (statement of Rep Mannix) (emphasis added). In that instance, Mannix apparently used the terms "work event" and "work-related condition" interchangeably.

In a later hearing before the House Committee on Labor, Mannix used different terminology, referring to the "compensable injury" as a particular medical condition.

When asked to give an example of how the combined condition statute works, Mannix explained:

> "If the physician says, 'no, this is the aging process, work may have had some impact but it's mainly the aging process,' then it won't be covered and the fact that you have a strain unless the two combine and stay combined so that the strain is the major contributing cause of some element of that degenerative disc disease. There'll be—*the point of the combination ending will be when the strain is no longer the major contributing cause.*"

Tape Recording, House Committee on Labor, SB 369, Mar 1, 1995, Tape 38, Side B (statement of Rep Mannix) (emphasis added).

Later in the hearing, Mannix again referred to back "strain" as an example of the compensable "injury" component of a combined condition claim:

> "say you have degenerative disc disease—and everybody does at some point in life, usually at the age of 40 and discs are wearing down—and you suffer a strain and the strain combined with your degenerative disc disease. *** But eventually, the strain resolved or becomes a very minimal strain, it's still interacting some with the degenerative disc disease. There are some that would argue that, 'well, at that point degenerative disc disease remains compensable when there's some interaction.' *** The point would be to say, 'well, wait a minute.' The strain that you had—lifting incident is usually a soft tissue—has basically resolved. You might have some residuals of that—the strain will remain compensable but the degenerative disc disease is no longer going to be eligible for treatment as part of your claim because the injury is not the major cause of that degenerative disc disease."

Tape Recording, House Committee on Labor, SB 369, Mar 1, 1995, Tape 39, Side A (statement of Rep Mannix).

Aside from the multiple instances in which Mannix referred to a compensable "injury" as a medical "condition," there are numerous instances throughout the legislative history of the 1995 amendments in which legislators, legislative staff, and witnesses did likewise. For example, upon introduction of the 1995 amendments in the Senate, Senator Gene Derfler, one of the bill's sponsors, offered

a detailed, section-by-section summary of the proposed amendments. Among other things, the summary explained that amendments to ORS 656.262(6)(c)—which would permit employers to deny a combined or consequential condition when the "otherwise compensable injury" ceases to be the major cause of the combined condition—would "permit a denial of responsibility after the work-related *condition* has been treated, to the extent that it is no longer the major cause of disability or need for treatment." Exhibit 7, Senate Committee on Labor and Government Operations, SB 369, Jan 30, 1995, at 13 (statement of Sen Gene Derfler) (emphasis added).

Staff measure summaries of the 1995 amendments described the effect of the amendments in similar terms. Describing proposed amendments to ORS 656.262(6)(c), for instance, a summary stated that the amendments permitted a denial "after the work-related *condition* has been treated and is no longer the major cause" of the combined or consequential condition. Staff Measure Summary, Senate Committee on Labor and Government Operations, SB 369, Jan 30, 1995, at 6 (emphasis added). Likewise, the summary described the effect of amendments to ORS 656.262(7)(a)—which authorize the denial of combined condition claims when the "accepted injury" is no longer the major cause of the combined condition—as requiring denial "[a]fter the work-related *condition* ceases to be the major contributing cause." *Id.* at 7 (emphasis added).

Thus, claimant's and the Court of Appeals' reliance on a reference by Mannix to a compensable "injury" as an "injury incident" is an especially slim reed on which to rest their reading of ORS 656.005(7)(a)(B). At best, it shows that at least one legislator provided not entirely consistent signals about the meaning of the terms at issue. In such cases, we are ordinarily reluctant to give legislative history much weight. *State v. Cloutier*, 351 Or at 102 ("The fact of the matter, however, is that the legislative history *** provides a little something for everyone and does not clearly resolve the matter one way or the other."); *Arken v. City of Portland*, 351 Or 113, 155, 263 P3d 975 (2011) (legislative history not helpful because it "is confusing and conflicting"). At worst, it

is at odds with not only the textual and contextual analysis that we have described but also with other portions of the legislative history that claimant and the Court of Appeals do not cite. In such cases, we are not inclined to give it any weight at all.

2.  *Meaning of "compensable" injury*

The foregoing analysis establishes that the "injury" component of the phrase "otherwise compensable injury" in ORS 656.005(7)(a)(B) refers to a medical condition, not an accident. But the issue remains whether that phrase refers to the particular medical condition that an employer or insurer previously accepted, as opposed to something broader. Said another way, the issue is whether the "compensable" component of the phrase means "accepted" under the circumstances presented here. We turn then to that issue, beginning with the text in its relevant context, before turning to prior judicial construction of the term.

a.   Textual analysis

An examination of ORS 656.005(7)(a)(B) in context establishes that the legislature most likely intended the phrase to refer to a specific kind of medical condition or disability, namely the one that an employer previously accepted. Recall that, under ORS 656.005(7)(a)(B), a combined condition is compensable unless the "otherwise compensable condition" is no longer the major contributing cause of that combined condition. ORS 656.262(7)(b) then states that an employer must issue a written denial of the combined condition claim "when the *accepted injury* is no longer the major contributing cause of the worker's combined condition before the claim may be closed." (Emphasis added.) The latter statute thus unmistakably equates the "otherwise compensable injury" with the "accepted injury." Likewise, ORS 656.268(1)(b) provides that the employer is authorized to close the combined condition claim if "[t]he *accepted injury* is no longer the major contributing cause" of the combined condition. (Emphasis added.) Again, the statute explicitly equates the "otherwise compensable injury" component of the combined condition claim with the "accepted injury." If, as we have concluded, the word "injury" in this context

means a medical condition, it necessarily follows that the statutory term "accepted injury" means the accepted medical condition.

In other words, the linchpin of claimant's argument and the Court of Appeals' analysis—that "there is no statutory provision that expressly links the compensability of a combined condition to its relationship to an 'accepted condition,'" 262 Or App at 648—is incorrect. The relevant statutes provide precisely such a link.

Claimant and OTLA object that ORS 656.262 and ORS 656.268 merely set out notice requirements and do not have the effect of determining what is or is not a compensable combined condition claim. The objection, however, is squarely contradicted by the wording of the statutes themselves, which are not merely about notice. They establish a process for "[s]pecify[ing] what conditions are compensable," ORS 656.262(6)(a), and set out the process for denying, ORS 656.262(7), and later closing, ORS 656.268(1)(b), a combined condition claim. That reading of the statutes is confirmed by the legislative history, as we describe below, which shows that those statutes were enacted in direct response to earlier Court of Appeals case law concluding that the then-existing statutes had included no mechanisms authorizing employers to close combined condition claims when the compensable injury had ceased to be the major contributing cause of the need for treatment.

Claimant and OTLA further object that nothing in the definition of the term in ORS 656.005(7)(a) explicitly connects the meaning of "otherwise compensable injury" with acceptance of a worker's claim, and the definition of the term in that statute predates the adoption of ORS 656.262(7)(b). The statement is correct, as far as it goes. But the conclusion that claimant and OTLA draw from it—that "otherwise compensable injury" has nothing to do with acceptance—does not necessarily follow. Although the original definition of "compensable injury" in 656.005(7)(a) did not explicitly link the term with acceptance, the fact remains that the courts long have supplied that very link. We turn, then, to prior construction of the relevant statutes.

b.   Prior judicial construction

As far back as the early 1980s, this court concluded that an employer's written acceptance had the effect of defining what constituted "compensable injuries." In *Bauman v. SAIF*, 295 Or 788, 670 P2d 1027 (1983), for example, the court held that, once an employer or insurer accepts a particular condition, it may not later reverse that acceptance and challenge its compensability. The court's rationale was that treating the acceptance as defining the scope of compensable injuries binds employers to cover the accepted conditions and prevents later attempts to retreat from covering what previously had been accepted. To hold otherwise, the court explained, "would encourage degrees of instability in the workers' compensation system that we do not believe the statute contemplates." *Id.* at 793; *see also Georgia-Pacific v. Piwowar*, 305 Or 494, 499, 753 P2d 948 (1988) ("In the absence of fraud, misrepresentation or other illegal activity, an insurer who accepts a claim for compensation may not later deny the same claim."). Relatedly, in *Johnson v. Spectra Physics*, 303 Or 49, 58, 733 P2d 1367 (1987), the court held that, when an employer or insurer issues a partial denial of a worker's claim, the worker must appeal that denial if he or she believes that work caused additional compensable injuries or diseases. The legislature's enactment of amendments to ORS 656.262 requiring employers or insurers to specify in their notices of acceptance which conditions or injuries are compensable codified that principle of existing case law.

Case law construing that codification makes clear that the phrase "otherwise compensable injury" refers to the particular medical condition that an employer has accepted as compensable. In particular, *Multifoods*, 333 Or 629, is close in point. In that case, the claimant suffered a back injury when working for an employer, and he filed a combined condition claim. The employer accepted an "acute lumbar strain (combined condition)," because the lumbar strain had combined with some preexisting degenerative lower back disease. *Id.* at 631-32. The employer later denied the combined condition on the ground that the accepted acute lumbar strain was no longer the major contributing cause of the combined condition. *Id.*

This court upheld the employer's denial of the combined condition claim. The court explained that, under ORS 656.262(7)(b), an employer is authorized to deny a previously accepted combined condition claim when "the *accepted injury* is no longer the major contributing cause of the worker's combined condition." *Id*. at 637 (emphasis added). In that case, the court said, "because the lumbar strain was no longer the major contributing cause of claimant's physical complaints, ORS 656.262(7)(b) permitted employer to issue a denial of the claim." *Id*. at 638. Thus, under *Multifoods*, the accepted medical condition—in that case, lumbar strain— was the "otherwise compensable injury," not the occupational accident that caused it. In so holding, *Multifoods* followed a line of Oregon appellate court case law stretching back several decades. *See, e.g., Roseburg Forest Products v. Zimbelman*, 136 Or App 75, 79, 900 P2d 1089 (1995) ("[T]he compensable injury is the medical condition" that results from the on-the-job accident.).

This court interpreted the phrase "compensable injury" in the same manner in *Sprague*, 346 Or at 672. That case involved a dispute over whether an employer was required to pay expenses for medical services. ORS 656.245(1)(a) provides for the payment of medical services for "every compensable injury," and further provides that, in the case of a consequential or combined condition claim, the employer or insurer is required to pay those medical services directed to "medical conditions caused in major part by the [compensable] injury." In that case, the claimant injured his knee at work and submitted a claim for a meniscus tear. *Sprague*, 346 Or at 666. The employer accepted that claim, and the claimant underwent surgery. *Id*. Years later, as a result of that surgery, the claimant developed arthritis in the knee, requiring a knee replacement. *Id*. at 666-67. But in the intervening years the claimant had become obese, and the knee-replacement surgery could not be performed until he underwent gastric bypass surgery. *Id*. The claimant filed a consequential claim for the gastric bypass surgery. *Id*.

The court framed the issue as whether the gastric bypass surgery was directed to a medical condition caused in major part by the compensable injury. Concluding that

the surgery was compensable, the court explained that "[t]he 'compensable injury' here is claimant's original meniscus tear, caused by a workplace accident." *Id.* at 672. The court determined that the gastric bypass surgery was necessary to address the claimant's arthritic knee condition, and the major contributing cause of that condition was the original, accepted meniscus tear. *Id.* at 673-75. Once again, the court plainly referred to a "compensable injury" as the previously accepted medical condition that was caused by an on-the-job accident.

Claimant acknowledges *Multifoods* and the fact that it held that the combined condition in that case was no longer compensable because the accepted injury—the particular medical condition that the employer had accepted—was no longer the combined condition's major cause. Claimant nevertheless argues that the decision lacks precedential force because of an absence of analysis. The Court of Appeals went further, arguing that *Multifoods* actually supports its conclusion that the "otherwise compensable injury" component of a combined condition claim refers to the "injury incident." 262 Or App at 655.

Concerning the contention that *Multifoods* was short on analysis, we disagree. The court noted that, under ORS 656.262(7)(b), the employer was authorized to deny a combined condition claim when the "accepted injury" was no longer the major contributing cause of the combined condition. There was no dispute that the accepted injury was the lumbar strain, the medical condition that the employer had previously accepted. It is not clear to us what additional analysis was required.

As for the Court of Appeals' suggestion that *Multifoods* actually supports its reading of the relevant statutes, it appears that, in characterizing *Multifoods* that way, the court relied on the fact that, at one point in its opinion, this court examined the question whether substantial evidence supported a finding that the major contributing cause of the combined condition was the claimant's degenerative condition. This court quoted a statement from the claimant's attending physician that, although the major cause was "[i]nitially [the] accident," the resulting strains should have

resolved, and there was no further reason for the claimant's symptoms other than the degenerative disease. 333 Or at 637.

The Court of Appeals apparently interpreted this court's quotation of *the claimant's doctor's* reference to the initial "accident" as meaning that this court viewed the "otherwise compensable injury" in that case as the accident itself, rather than the accepted injury. This court, however, quoted the doctor not for her opinion as to the initial cause of the condition, but for her opinion that—whatever that initial cause may have been—the major cause later became the preexisting degenerative condition. Moreover, whatever else might plausibly be read into this court's quotation from the claimant's physician, the fact remains that it expressly relied on ORS 656.262(7)(b) for its conclusion that the employer was authorized to deny the combined condition claim because "*the accepted injury*"—in that case, a particular medical condition, a lumbar strain—was no longer the major contributing cause of that combined condition. 333 Or at 637 (emphasis added).

c.  Legislative history

Claimant argues that treating a "compensable" injury as an "accepted" condition conflicts with the legislative history of the 1995 amendments to the workers' compensation statutes. In that regard, claimant again relies on the opinion of the Court of Appeals. And again, a careful reading of the particular snippet of history on which the court relied offers no support for the conclusion that claimant and the court draw from it.

During hearings on the 1995 amendments, Mannix stated:

> "The acceptance [of the combined condition] itself does not have any negative consequences for the worker. The negative consequences are if something isn't paid. If later on there is an issue about whether there is a new injury, it is important to go back and see what was accepted on the claim."

Tape Recording, House Committee on Labor, SB 369, Mar 6, 1995, Tape 46, Side A (statement of Rep Mannix). The court

emphasized the first sentence of those remarks as a refutation of the position that the legislature intended the scope of the accepted injury to limit the nature of the "otherwise compensable injury" in a combined condition claim. *Brown*, 262 Or App at 650.

The quoted excerpt, however, appears to have been taken from its context. In making those comments, Mannix was not discussing either the amendments to ORS 656.005(7)(a)(B) generally or the meaning of an "otherwise compensable injury" particularly. Rather, the subject of that portion of his testimony was a separate part of the bill concerning new and omitted conditions claims, ultimately enacted as ORS 656.262(6)(d) and ORS 656.267. To the extent that Mannix's comments were directed at those amendments, they make perfect sense: The acceptance of a claim has no "adverse consequences" to the claimant, because, if the acceptance omits conditions that claimant believes should have been included, the new provision would provide an avenue of relief.

What is more, it is not entirely clear that Mannix's comments actually were about then-proposed amendments to those sections. Rather, his comments appear to be directed at his understanding of the original statutory requirement that employers or insurers specify accepted conditions, enacted five years earlier.[8] As we have noted above, a legislator's comments on the intended meaning of legislation adopted years earlier are entitled to no weight. *See DeFazio*, 296 Or at 561 (so stating).

More importantly, other legislative history confirms that, contrary to that court's reading of the statute, the legislature affirmatively intended that employers be authorized to deny combined condition claims when the medical conditions that they previously accepted ceased to be the major cause of the combined conditions.

---

[8] The quoted statement was preceded by Mannix's comment that the law requiring a carrier to specify accepted conditions was "designed in 1990 *** for responsibility fights. I'm one of the people who supported putting it in. We wanted to know what was being accepted as part of this claim so it was documented." Tape Recording, House Committee on Labor, SB 369, Mar 6, 1995, Tape 46, Side A (statement of Rep Mannix).

Recall that the 1990 legislative overhaul altered the standard of causation that applied to combined condition claims, requiring an employer to provide compensation "so long as" the "otherwise compensable injury" remains the "major contributing cause" of the combined condition. ORS 656.005(7)(a)(B). Following the 1990 special session, the Court of Appeals concluded that, although that legislation required employers to compensate combined condition claims once it is established that the major cause of the combined condition was the otherwise compensable injury, the legislation failed to provide any mechanism for terminating those benefits once the otherwise compensable injury ceased to be the major cause of the combined condition. *See, e.g., United Airlines, Inc. v. Brown*, 127 Or App 253, 257, 873 P2d 326, *rev den*, 319 Or 572 (1994). That court concluded that ORS 656.005(7)(a)(B) merely defined a worker's "substantive right to disability and medical benefits." *Id.* The court explained that "[n]othing in the text or context of ORS 656.005(7)(a)(B) suggests that the legislature intended that provision to provide an employer with the procedural authority to deny an accepted claim." *Id.*

In 1995, the legislature enacted a major revision to the workers' compensation statutes, in large part in response to a number of court decisions that had interpreted the 1990 legislation. As Senator Derfler explained when he introduced SB 369 to the legislature:

> "Whenever the law changes, the new language must be tested by the courts. By mid-1993, interpretations of SB 1197 were appearing from the Court of Appeals and later from the Supreme Court. As these cases were decided, it became clear that the actual language of SB 1197 was, in many cases, ambiguous or failed to clearly express the intent of the reforms. Provisions of the bill intended to reduce litigation contained too many loopholes."

Exhibit 7, Senate Labor and Government Operations Committee, SB 369, Jan 30, 1995, at 1 (statement of Sen Derfler). SB 369 was intended to address a number of those prior appellate court decisions. One of them was *United Airlines*. To address the "loophole" identified by that Court of Appeals decision, the legislature enacted provisions that are now codified at ORS 656.262 and ORS 656.268, which

expressly provide a process for an employer to deny a combined condition claim when the "accepted" injury is no longer the major cause of the combined condition. *Id.* at 13-15. *See also* [SAIF v. Belden](), 155 Or App 568, 572-74, 964 P2d 300 (1998), *rev den*, 328 Or 330 (1999) ("Now, an insurer can accept a combined condition pursuant to ORS 656.005(7)(a)(B) without being concerned that it will be obliged to continue to pay compensation for that condition if it stops being compensable."). *Id.* at 574.

   3.  *Policy arguments*

        Claimant argues that, "[i]f 'compensable injury' is defined by the conditions in the notice of acceptance, then the compensable injury becomes severely limited to what the insurer deems acceptable and will not reflect all of the medical effects caused by the work accident." In particular, claimant contends that permitting the employer's acceptance to determine the scope of an "otherwise compensable injury" leaves him without a remedy for the worsening of his preexisting condition.

        The problems with that complaint are two-fold. To begin with, it is essentially a policy argument. The fact of the matter is that the statutes explicitly equate the "otherwise compensable injury" component of a combined condition claim with the "accepted injury." Arguments about whether that is fair or produces results at odds with public policy are better directed to the legislature. *See Booth v. Tektronix, Inc.*, 312 Or 463, 473, 823 P2d 402 (1991) ("Weighing of policy arguments [in the context of workers' compensation law] is within the purview of the legislature, not the courts.").

        Even putting that aside, though, our reading of the statutes does not leave a worker in claimant's circumstances bereft of a remedy for an employer's failure to accept, in claimant's words, "all of the medical effects caused by the work accident." Claimants who believe that an employer's acceptance wrongly omits any such medical effects of a work accident are free to challenge the scope of the employer's acceptance *at any time*, under ORS 656.262(6)(d).

        In fact, if claimant were correct that an "otherwise compensable injury" refers not to an accepted condition but

more broadly to a "work accident" and "all the effects that flow from it," the statute providing claimants the remedy of filing a new or omitted condition claim would serve no purpose at all. A claimant would never have to file such a claim, because the "otherwise compensable injury" already would include any additional medical conditions flowing from the work accident that the employer failed to accept. It is one thing for legislation to include some slippage in terms or an occasional redundancy. It is an altogether different thing to conclude that an entire section that the legislature took the trouble to enact has no effect whatever. As this court noted in *Cloutier*,

> "[A]t the least, an interpretation that renders a statutory provision meaningless should give us pause, both as a matter of respect for a coordinate branch of government that took the trouble to enact the provision into law and as a matter of complying with the interpretive principle that, if possible, we give a statute with multiple parts a construction that 'will give effect to all' of those parts."

351 Or at 98.

Likewise, claimant was not without a remedy for his worsened conditions. As we noted above, the workers' compensation statutes expressly provide a remedy for worsening. *See* ORS 656.273 (spelling out procedure for obtaining compensation for "worsened-condition" or "aggravation" claims). Indeed, the original notice of acceptance advised claimant that, should his symptoms worsen, he would be entitled to file such a claim. And the ALJ in this case observed that that very remedy was available to claimant, noting that claimant, for some unexplained reason, had failed to avail himself of it. The fact that claimant did not file such a claim is no reason to now adopt his novel interpretation of the workers' compensation statutes.

Claimant also invokes the policy concerns voiced by Workers' Compensation Board Member Weddell in her concurring opinion. Specifically, claimant asserts that our reading of the relevant statutes cannot be correct because it would preclude an injured worker from obtaining compensation for diagnostic medical services "to investigate the

complete result" of a work accident, and such a result is poor public policy.

As we have noted, the workers' compensation statutes expressly address the subject of the compensability of such medical services in ORS 656.245. This case does not involve that issue. In fact, it is the subject of ongoing litigation in other cases. *See, e.g., SAIF v. Carlos-Macias*, 262 Or App 629, 325 P3d 827, *rev pending* (2014) (holding that such diagnostic medical services are compensable). Accordingly, we will express no opinion on the subject one way or the other beyond observing once again that statutory construction generally does not start with a desired policy outcome and then work back from there to the construction that achieves it. Such medical services may or may not be compensable. Whether they are will depend on the careful construction of the relevant terms of the applicable statute in accordance with ordinary rules that apply to that task. If ORS 656.245 ultimately proves unavailing to a worker seeking compensation for medical services in the circumstances that claimant describes, that will be a matter for the legislature to address.

In summary: ORS 656.005(7)(a)(B) provides that, when an "otherwise compensable injury" combines with a preexisting condition, the combined condition is compensable only so long as the otherwise compensable injury is the major contributing cause of the combined condition. That is to say, when the otherwise compensable injury ceases to be the major cause of the combined condition, an employer is authorized to deny further benefits and close the claim. ORS 656.262(7)(b) and ORS 656.268(1)(b) expressly require an employer to take that action when the "accepted injury" is no longer the major cause of the combined condition, apparently equating the "otherwise compensable injury" with the injury that the employer previously accepted. And the term "injury" in that context refers to the particular medical condition that the employer accepted. Thus, an employer is authorized to deny further benefits and close a combined condition claim when the medical condition that the employer previously accepted ceases to be the major contributing cause of that combined condition.

The foregoing perhaps could have been more plainly stated in the relevant statutes. As we noted at the outset of this opinion, the relevant statutes are rife with ambiguities. Still, the foregoing interpretation is the one most consistent with the workers' compensation statutes as a whole, in light of prior judicial interpretations, and taking into account their legislative history. The identification of the intended meaning of a statute is not a precise science, and often our best efforts to apply rules of interpretation produce no more than an estimation of what the legislature likely intended. *See Bell v. Tri-Met*, 353 Or 535, 542, 301 P3d 901 (2013) (statutory construction analysis sometimes yields "no neat solution, and the best answer lies in sifting the analytical sand for probability, not certainty, of legislative intent.").

### III.   APPLICATION

We turn, then, to the proper disposition of this case in light of the correct understanding of the relevant statutory terms. Claimant's combined condition claim characterized the "otherwise compensable injury" as "lumbar strain" caused by the December 14, 2008, accident. SAIF accepted the combined condition claim, specifying that the claim consisted of "lumbar strain combined with preexisting lumbar disc disease and preexisting spondylolisthesis." Claimant never challenged the scope of that acceptance, as he was entitled to do. The "accepted injury" thus defined and limited what was the "otherwise compensable injury" for purposes of ORS 656.005(7)(a)(B). It is now undisputed that the accepted lumbar strain no longer is the major contributing cause of the combined condition. Under ORS 656.262(7)(b), an employer is entitled to deny a combined condition claim when the accepted injury is no longer the major contributing cause of that combined condition. The Workers' Compensation Board therefore correctly upheld SAIF's denial of claimant's combined condition claim, and the Court of Appeals erred in concluding to the contrary.

The decision of the Court of Appeals is reversed. The final order of the Workers' Compensation Board is affirmed.