Argued and submitted February 10, 2020, affirmed September 1, 2021

In the Matter of the Compensation of
Phyllis D. Sexton, Claimant.

Phyllis D. SEXTON,
*Petitioner,*

*v.*

SKY LAKES MEDICAL CENTER,
*Respondent.*

Workers' Compensation Board
1600049; A167536

496 P3d 1056

In this appeal of a Workers' Compensation Board (board) order affirming denial of certain benefits, petitioner assigns error to the administrative law judge's (ALJ) application of the major contributing cause standard rather than the material cause standard. Specifically, petitioner argues that the ALJ and board erred by concluding that her injuries constituted a combined condition, involving both preexisting conditions and workplace injuries, rather than arising solely from work. Petitioner argues that in the context of a new or omitted condition claim, an employer must have previously accepted a medical condition before the employer may treat a subsequent claim as part of a combined condition and deny it on major contributing cause grounds. *Held*: The relevant statutes do not require an employer to have previously accepted a noncompensable preexisting condition in order to later deny benefits on major contributing cause grounds. Since the statutes do not impose such a requirement, the ALJ and board did not err in analyzing petitioner's claim under the major contributing cause standard rather than the material cause standard.

Affirmed.

James S. Coon argued the cause for petitioner. Also on the briefs was Thomas, Coon, Newton & Frost.

Trisha D. Hole argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and Shorr, Judge, and James, Judge.

JAMES, J.

Affirmed.

**JAMES, J.**

Claimant had a history of back problems that predated a workplace injury. She filed a claim for the injury, and employer, Sky Lakes Medical Center, accepted a claim for a left hip contusion. Claimant went on to file a new or omitted condition claim for an L4-5 disc bulge, pseudoclaudication, and a subacute fracture involving the anterior body in the upper lumbar spine—which employer denied. An administrative law judge (ALJ) and the Workers' Compensation Board (board) upheld the denial, finding in part that claimant had not proven the existence of her claimed pseudoclaudication and subacute fracture conditions. The ALJ and the board further found that, although claimant had met her burden of establishing the existence and material causation of the L4-5 disc bulge, employer met its burden to establish that it was claimant's preexisting condition, and not the claimed workplace injury, that was the major contributing cause of the disability/need for treatment of the combined L4-5 disc bulge condition. Claimant seeks judicial review of that order, arguing that employer improperly denied, and the board improperly analyzed, her L4-5 disc bulge claim as a "combined condition" claim under ORS 656.005(7)(a)(B). Specifically, claimant argues that, in the context of a "new or omitted condition claim," an employer must have previously accepted a medical condition before it can treat the new or omitted condition claim as part of a "combined condition" and deny it as such. We conclude otherwise, and therefore affirm the board's order.

The relevant facts are not in dispute. Claimant began working in 1972 for employer as a nurse and an educator. In October 2012, claimant was injured at work when she tried to prevent a patient from falling, after which she experienced pain in her back, buttocks, and legs. After an MRI showed "L3-4 and L4-5 disc herniations," claimant underwent steroid injections by Dr. Wenner. About eight months later, Wenner deemed her medically stationary, "with an increased risk of future disc herniation or back pain," and released her to full activity without restriction. Employer accepted the claim as a disabling lumbar strain, paid temporary disability (time-loss) for December 2012 through February 2013, and closed the claim.

After another work-related injury in 2013, claimant again developed pain and numbness down her legs, for which she filed an aggravation claim. Employer denied the claim after an employer-arranged examination with independent medical examiners (IMEs) who concluded that "claimant's lumbar sprain had not pathologically worsened and her pre-existing conditions were the major contributing cause of her disability/need for treatment." Claimant did not contest that denial.

On April 14, 2015, a patient at claimant's work-place became agitated, and while trying to escape restraint, struck claimant, causing her to twist and forcefully strike a doorframe. Afterwards, her back became stiff and she was unable to move, and she felt a searing pain into her left hip and upper thigh. On April 21, a family nurse practitioner treated claimant for "tenderness and nerve pain down her buttocks, down her left thigh and down the leg all the way to the foot, with some foot numbness." Claimant's primary treating physician reported that "her bruise was almost gone and that she was having very minimal left hip pain" and diagnosed a "left hip contusion and left sciatica from a patient kicking her at work; almost resolved." Employer accepted a claim for "left hip contusion," but did not comment on the sciatica.

In September 2015, Wenner interpreted an MRI to show "an L4-5 disc bulge, pseudoclaudication, and a sub-acute fracture involving the anterior body in the upper lumbar spine without displacement," and performed an epidural steroid injection "at L4-5" in October. He also reported that claimant's "main issue was stenosis at L4-5 due to the original disc protrusion as well as the recent injury, which had worsened the stenosis." As such, claimant filed a new or omitted medical condition claim for those diagnosed conditions, under the accepted April 2015 injury claim for "left hip contusion."

In November, after another doctor reviewed claimant's records on behalf of employer and found that her April 2015 work injury "was not the major contributing cause of the need for treatment because of the historical preexisting

pathology," employer denied the new/omitted condition claim. The denial letter stated, in relevant part:

> "Empire Pacific administers the workers' compensation program for your employer. The above referenced claim has been processed in accordance with Oregon law. We are in receipt of an 827 request for acceptance of new/omitted medical conditions on an existing claim. We are interpreting this request as separate/independent new condition claims for "L4-5 disc bulge; pseudoclaudication, and; subacute fracture involving the anterior body and upper lumbar spine. The purpose of this letter is to deny compensability of the newly claimed conditions relative to the April 14, 2015 work injury is not a material and/or the major contributing cause of these claimed conditions, to the extent they exist. This is a partial denial only. We reserve the right to amend the basis for this denial as additional information is received. This denial is based in part on the results of an IME. Your attending physician has yet to respond to the IME."

In March 2016, claimant was examined by Dr. Conaughty on referral from her primary treating physician, who diagnosed "spinal stenosis, acute left lumbar radiculopathy and spinal instability" and suspected that during her fall of April 14, 2015, the instability was either caused or worsened. On Conaughty's recommendation, claimant underwent surgery "at L4-5" by Wenner in April. In May, Conaughty signed a concurrence letter from employer, agreeing that "the preexisting arthritic changes were the major cause of claimant's disability and need for treatment stemming from the L4-5 level." In June 2016, Wenner reported that claimant's history and findings at surgery were consistent with an acute injury and opined that the April 14, 2015 work injury was the cause.

In August 2016, Dr. Bergquist examined claimant on behalf of employer and reported that the "major cause of claimant's disability or need for treatment" was not the April 2015 work injury, but rather the "preexisting condition of her lumbar spine." In September, Dr. Teed signed a concurrence letter, agreeing that "the major cause of claimant's L4-5 discogenic pathology and resultant disability/ need for treatment was preexisting arthritic change." Later

that month, Bergquist reported that claimant's 2012 and 2015 MRIs "confirmed that there were no acute changes in the intervening three years." He disagreed with Wenner's conclusion that "an L4-5 disc herniation occurred acutely on August 14, 2015 [*sic*]." Rather, he stated that the 2012 MRI showed that "claimant already had a disc herniation at L4-5." In March 2017, he signed a concurrence letter from employer, explaining why he disagreed with Wenner's opinion.

Claimant requested a hearing before an ALJ, contesting employer's November 2015 denial of the new or omitted condition claim. She argued that, based on the opinion of her treating doctors, she had established the compensability of those conditions. She also argued that the correct legal standard in this case is a "material contributing cause" standard and that she had met her burden of proof. Employer responded that the more persuasive expert opinions were provided by the IME and IME-referred doctors, which in turn established that the conditions were not compensable. Employer also contended that it had shown that the work injury was not the *major* contributing cause of claimant's disability and need for treatment of her combined condition.

The ALJ found that, although claimant had met her burden to establish that the injury was a *material* cause of that disability and need for treatment, employer also met its burden (given the presence of a legally cognizable pre-existing condition) to establish that "the 'otherwise compensable injury' was never the *major* contributing cause[.]" (Emphasis added.) Neither party challenges that finding of fact. The ALJ went on to apply the "major cause" standard rather than the "material cause" standard, treating the claim as one for a "combined condition." The ALJ therefore upheld employer's denial, and the board affirmed.

On judicial review, claimant contends that the ALJ erred in treating her claim as a "combined condition" claim and that the ALJ and board erred in upholding employer's denial. Specifically, she asserts first that a "combined condition" analysis requires a previously accepted compensable condition, which was absent in this case. Second, she alleges that employer's denial letter never denied a "combined

condition," but rather that employer argued for the first time at the hearing that claimant's condition was a "combined condition" and that the "major contributing cause" standard that controls such claims applied, rather than the "material cause" standard that applies to new or omitted conditions—which meant that the existence of a combined condition was not properly before the board. Employer responds, first, that, in the context of determining the compensability of a new or omitted condition claim, a "combined condition" can exist under ORS 656.005(7)(a)(B) without a previously accepted condition and, second, that the denial letter "expressly denied compensability of the L4-5 disc bulge on both material and major contributing cause grounds, setting the stage for a 'combined condition' defense under ORS 656.005(7)(a)(B)." Employer thus contends that the board properly applied the appropriate legal standard and that the board's order should be affirmed.

Whether a combined condition, as defined in ORS 656.005, can exist without a previous acceptance of the work-related part of that condition is a question of law. *DCBS v. Muliro*, 359 Or 736, 742, 380 P3d 270 (2016) ("Determining the intended meaning of a statute is a question of law."). Ordinarily, under ORS 656.266(1), a claimant has the burden to establish that a particular injury is compensable by proving that the work-related injury is a "material" cause of the disability or the need for treatment. However, ORS 656.005 provides at least two exceptions to that burden, by defining "compensable injury" as subject to the following limitations:

"(A)   An injury or disease is not compensable as a consequence of a compensable injury *unless the compensable injury is the major contributing cause of the consequential condition.*

"(B)   If an otherwise compensable injury *combines at any time with a preexisting condition to cause or prolong disability or a need for treatment*, the combined condition is compensable only if, so long as and to the extent that the *otherwise compensable injury is the major contributing cause* of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition."

ORS 656.005(7)(a) (emphases added). In such cases, although the burden still lies with the claimant, the ordinary material contributing cause standard no longer applies; the claimant must establish that the work-related injury was the *major* contributing cause—a higher standard than "material"—of either a "consequential" or "combined" condition. *Brown v. SAIF*, 361 Or 241, 252, 391 P3d 773 (2017).

Claimant notes that in *Brown*, 361 Or at 272, the court held that the phrase "otherwise compensable injury" in ORS 656.005(7)(a)(B) means a "previously accepted condition," and therefore contends that since the L4-5 disc bulge was never accepted, there was no "otherwise compensable injury" which combined with her preexisting condition. She argues that, thus, the major contributing cause statute does not apply. But *Brown* is not controlling in the context of new or omitted claims, as we have here. *Brown* instead involved whether a claim must have previously been accepted in the setting of a combined condition "ceases" denial—where a combined condition has been accepted and then denied under ORS 656.262(6)(c). 361 Or at 251, 283. The other cases that claimant relies on for her argument that a combined condition claim can only exist once a condition has first been accepted—*Caren v. Providence Health System Oregon*, 365 Or 466, 446 P3d 67 (2019); *Columbia Forest Products v. Woolner*, 177 Or App 639, 34 P3d 1203 (2001); and *Croman Corp. v. Serrano*, 163 Or App 136, 986 P2d 1253 (1999)—are similarly not controlling because they do not involve new or omitted claims. Generally, the cases in which we have inquired into the factual question of whether or not an employer's letter accepting or denying a combined condition claim was procedurally sufficient in adherence to the requirement of a previous acceptance of the preexisting condition have only been in the context of "ceasing," aggravation, or other pre claim-closure modification. *See, e.g., TriMet v. Wilkinson*, 257 Or App 80, 85-86, 304 P3d 46 (2013) (concluding that the employer's denial letter was procedurally invalid because the employer had not first issued a written acceptance of a combined condition).

The case before us is more comparable to the situation in *Hammond v. Liberty Northwest Ins. Corp.*, where the

dispute involved "the statute's applicability to an initial claim for an injury that *itself* constitutes the combined condition," 296 Or App 241, 245, 437 P3d 269 (2019) (emphasis added), as well as *Tektronix, Inc. v. Nazari*, 117 Or App 409, 844 P2d 258 (1992), *adh'd to as modified on recons*, 120 Or App 590, 853 P2d 315, *rev den*, 318 Or 27 (1993). Though both of those cases involved initial claims—as opposed to new or omitted claims—their reasoning suggests that they would apply to the latter type of claim as well. In *Nazari*, in concluding that a former version of ORS 656.005(7)(a)(B) was applicable in the context of an initial claim, we noted that "the objective of the legislature was to adopt the major contributing cause standard of proof with respect to *any claim* for benefits or disability related to a *preexisting, noncompensable condition.*" 120 Or App at 594 (emphases added). Although the statute has since been amended, the changes do not change the outcome, and we have thus applied *Nazari*'s reasoning to the current version of the statute. *See Hammond*, 296 Or App at 247 ("Our interpretation of the prior version of ORS 656.005(7)(a)(B) remains persuasive under the current version of the statute."). In *Hammond*, we noted that *Brown*'s analysis would not only be inapplicable in the context of an initial claim, but moreover, requiring a previously accepted injury would be nonsensical in such a context. *Id.* at 245.

The same logic applies in the case of a new or omitted condition. To put it in the words of our opinion in *Nazari*, requiring a previous acceptance of a preexisting condition that the employer determined not to be compensable would be illogical, even in the case of a new or omitted condition, because the "employer would be required to accept a claim for which no benefits are due." 117 Or App at 412.

We are persuaded that the reasoning of *Hammond* and *Nazari* controls here. We thus need not inquire into the factual issue of employer's acceptance, because we conclude that, as a matter of law, employer was not procedurally required to issue an acceptance of the preexisting condition. Accordingly, the board did not err.

Affirmed.