Argued and submitted June 24, 2021; decision of Court of Appeals reversed, order of Workers' Compensation Board affirmed June 3, 2022

In the Matter of the Compensation of
Theresa M. Robinette, Claimant.

Theresa M. ROBINETTE,
*Respondent on Review,*

*v.*

SAIF CORPORATION
and HCW Clients -
Oregon Homecare Commission,
*Petitioners on Review.*

(SAIF 18-01420) (CA A170673) (SC S068207)

511 P3d 1074

Claimant injured her right knee at work and her workers' compensation claim was accepted for a right knee strain. Following a knee surgery, claimant's doctor closed the workers' compensation claim and claimant was awarded whole person impairment for the surgical value associated with the knee surgery. Upon reconsideration of the notice of closure, a medical arbiter found additional loss of use or function of claimant's knee in the form of reduced range of motion and decreased stability but attributed those findings entirely to non-work-related causes. Claimant was awarded additional impairment value for chronic condition impairment but did not receive any value for the reduced range of motion and decreased stability, based on the medical arbiter's findings that those were not related to the compensable injury. The Workers' Compensation Board upheld that award, but the Court of Appeals reversed. SAIF sought review of that decision. *Held*: When calculating permanent partial disability awards, each distinct loss of use or function of a body part is considered separately to determine if it qualifies as "impairment"—that is, "loss of use or function of a body part or system due to the compensable industrial injury"—under ORS 656.214.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.

On review from the Court of Appeals.*

Daniel Walker, Appellate Counsel, SAIF Corporation, argued the cause and filed the briefs for petitioners on review.

––––––––––––––
* On judicial review from the Workers' Compensation Board. 307 Or App 11, 475 P3d 470 (2020).

Jodie Phillips Polich, Law Offices of Jodie Anne Phillips Polich, PC, Milwaukie, argued the cause and filed the brief for respondent on review.

Rebecca A. Watkins, Sather Byerly & Holloway, LLP, Portland, filed the brief for *amici curiae* Oregon Business & Industry and Providence Health & Services.

Sommer E. Tolleson, Tolleson Conratt Nielsen Maher & Replogle LLP, Tigard, filed the brief for *amicus curiae* Associated General Contractors - Oregon Columbia Chapter.

Julene M. Quinn, Portland, filed the brief for *amicus curiae* Oregon Trial Lawyers Association.

Before Walters, Chief Justice, and Balmer, Flynn, Duncan, Nelson, and Garrett, Justices, and Nakamoto, Senior Judge, Justice pro tempore.**

NELSON, J.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.

_____

** DeHoog, J., did not participate in the consideration or decision of this case.

**NELSON, J.**

The dispute in this workers' compensation case provides this court with another opportunity to address the meaning of the word "impairment" within the context of the workers' compensation statutory structure. Under ORS 656.214, impairment is defined as "the loss of use or function of a body part or system due to the compensable industrial injury." This case involves loss of use or function of claimant's right knee—specifically, reduced range of motion and decreased stability in that knee—that was determined to be entirely related to causes other than claimant's compensable workplace injury. In addition, claimant has loss of use or function of that same knee—surgical value and chronic condition loss—that is related to the workplace injury. In claimant's view, she was entitled to the full measure of impairment for *all* new findings of loss—the reduced range of motion, the decreased stability, the surgical value, and the chronic condition. On judicial review, the Court of Appeals agreed with claimant, holding that "claimant's impairment 'as a whole' includes her whole-person impairment, of which the work injury is a material contributing cause, as well as her impairment due to loss of range of motion and stability." *Robinette v. SAIF*, 307 Or App 11, 16, 475 P3d 470 (2020). SAIF disagreed and sought review before this court, arguing that findings of loss due entirely to causes other than the compensable injury do not satisfy the statutory definition of "impairment" and, accordingly, should be excluded from an injured worker's permanent partial disability award.

We agree with SAIF. For the reasons that follow, we conclude that claimant was not entitled to compensation for the reduced range of motion and decreased stability findings of loss. Accordingly, we reverse the decision of the Court of Appeals and affirm the order of the Workers' Compensation Board.

## I.   FACTS AND PROCEDURAL HISTORY

### A.   *Overview of Key Terminology and Statutory Background*

To provide necessary context for the issues presented in this case, we begin with a brief overview of key terminology and the workers' compensation claims process. After a

workplace injury occurs, an injured worker is required to provide written notice of the injury to the employer within 90 days of the injury occurring. *See* ORS 656.265(1)(a) ("Notice of an accident resulting in an injury or death shall be given immediately by the worker or a beneficiary of the worker to the employer, but not later than 90 days after the accident. The employer shall acknowledge forthwith receipt of such notice."). During its investigation and evaluation of a submitted claim, the insurer or self-insured employer must determine if the claim is compensable. ORS 656.262. A "compensable injury" is "an accidental injury * * * arising out of and in the course of employment requiring medical services or resulting in disability or death." ORS 656.005(7)(a). In most circumstances, the burden of proving that a particular injury is compensable, as well as proving the nature and extent of any disability resulting from that injury, is on the injured worker. ORS 656.266(1).

Once the insurer or self-insured employer has determined whether the claim is compensable, it is required to inform the claimant in writing of the claim's acceptance or denial. *See* ORS 656.262(6)(a) ("Written notice of acceptance or denial of the claim shall be furnished to the claimant by the insurer or self-insured employer within 60 days after the employer has notice or knowledge of the claim."). The workers' compensation statutes set out specific requirements for both a notice of acceptance and a notice of denial. *See* ORS 656.262(6)(b) (setting out the requirements for a notice of acceptance); ORS 656.262(9) (setting out the requirements for a notice of denial).

A claim may be closed when the accepted, compensable condition becomes medically stationary, that is, when "no further material improvement would reasonably be expected from medical treatment or the passage of time." *See* ORS 656.005(17) (defining "medically stationary"). At that time, permanent partial disability awards, if applicable, are calculated.[1] Then, ORS 656.262(7)(c) sets out the procedure for closing the claim:

---

[1] Permanent partial disability is defined as either "[p]ermanent impairment resulting from the compensable industrial injury or occupational disease" or "[p]ermanent impairment and work disability resulting from the compensable industrial injury or occupational disease." ORS 656.214(1)(c). As discussed

> "When an insurer or self-insured employer determines that the claim qualifies for claim closure, the insurer or self-insured employer shall issue at claim closure an updated notice of acceptance that specifies which conditions are compensable. *** Any objection to the updated notice or appeal of denied conditions shall not delay claim closure pursuant to ORS 656.268. If a condition is found compensable after claim closure, the insurer or self-insured employer shall reopen the claim for processing regarding that condition."

The claimant may then accept the closure and the payment of benefits or, if the claimant objects to the terms of the notice of closure or the scope of the award, the worker may request reconsideration. *See generally* ORS 656.268 (5)(c) (describing requirements for notice of closure, including a statement regarding a claimant's right to request reconsideration). If the claimant's physical impairment is in dispute on reconsideration, then the Director of the Department of Consumer and Business Services must appoint a medical arbiter to consider the claim. *See* ORS 656.268(8)(a) ("If the basis for objection to a notice of closure issued under this section is disagreement with the impairment used in rating of the worker's disability, the director shall refer the claim to a medical arbiter appointed by the director.").

B.  *Facts and Procedural History*

With that background in mind, we turn to the facts of this case. In 2010, claimant, then a school custodian, slipped on leaves at work and injured her right knee, thigh, and hip. Claimant filed a workers' compensation claim with her employer and it was accepted for right hip, right knee, and right thigh strains.

In 2016, claimant was treated in the emergency department at Legacy Mount Hood for right knee pain resulting from another fall that had occurred at her workplace when she tripped over a piece of equipment, twisted her right knee, and landed with all her weight on that knee. Claimant filed a new workers' compensation claim for that incident and that

---

in greater detail below, permanent partial disability benefits are calculated in accordance with the rules and procedures set forth in ORS 656.214, and the accompanying administrative rules.

claim was accepted for a right knee strain. Claimant underwent arthroscopic partial medial meniscectomy surgery for a right knee medial meniscus tear that year.

In August 2018, claimant's doctor—the same one who had performed her 2016 knee surgery—conducted a closing evaluation of claimant's workers' compensation claim. That doctor released claimant back to her job, effective as of September 2017, and indicated that claimant did not suffer significant limitations in the repetitive use of her right knee or leg. The notice of closure that followed that evaluation awarded two percent loss of the whole person for impairment to claimant's right knee, based on the surgical value associated with claimant's right knee surgery.

Claimant requested reconsideration of the notice of closure. An orthopedic surgeon, acting on SAIF's behalf, conducted a new evaluation of claimant's injury. A medical arbiter examination also took place. Despite the earlier findings from claimant's doctor, the medical arbiter found that claimant was significantly limited in the repetitive use of her right leg for more than two-thirds of an eight-hour work period and discovered that claimant suffered some additional loss of the use of her right knee in the form of reduced range of motion and decreased stability. The medical arbiter, however, attributed those findings entirely to non-work-related causes.[2] Accordingly, the order on recon-

---

[2] SAIF frames the medical arbiter's findings slightly differently than the administrative law judge (ALJ) who reviewed claimant's case. SAIF notes that, in response to specific questions in a cover letter, the doctor who performed the medical arbiter examination stated that the "[r]educed ranges of motion of the right knee were attributed to body habitus and not to the accepted conditions," though he later concluded his report by stating that, "[t]he stability findings are one hundred percent (100%) due to preexisting non-work-related degenerative changes of the right knee as well as the range of motion findings being one hundred percent (100%) related to the preexisting condition of osteoarthritis of the right knee." The ALJ's order on review states that the medical arbiter "attributed reduced ranges of motion of the right knee to body habitus and not to the accepted conditions" and that "there might also be contribution to restriction of ranges of motion due to documented arthritis of the right knee," but that the "stability findings were one hundred percent due to non-work-related degenerative findings." Both statements appear to accurately reflect the report that the medical arbiter prepared after reviewing claimant's case and the difference in framing is not consequential to our opinion today. Although both parties agree that the medical arbiter found that claimant's right knee range of motion and stability findings were not attributable to the accepted right knee condition, they frame

sideration affirmed the previous notice of closure and the award for two percent whole person impairment.

Claimant then requested an administrative hearing concerning the extent of her impairment award. Following that hearing, the administrative law judge (ALJ) amended the order on reconsideration to recognize additional impairment for a chronic condition of the right knee that had not previously been calculated. The ALJ explained that the surgical value previously awarded should have been "combined with the five percent chronic condition impairment for the leg for a 10 percent impairment value for loss of the leg[,]" which converts to an award for five percent loss of the whole person. In short, the amended order on reconsideration modified the total permanent partial disability award to five percent whole person impairment. Based on the medical arbiter's conclusion that the reduced range of motion and decreased stability findings were unrelated to the compensable injury, the ALJ did not modify the permanent partial disability award to include any additional value for impairment related to those findings.

Claimant requested review of that decision by the Workers' Compensation Board (board). The board adopted and affirmed the ALJ's order.

Claimant sought judicial review in the Court of Appeals, arguing that, under this court's decision in *Caren v. Providence Health System Oregon*, 365 Or 466, 446 P3d 67 (2019), she was entitled to an award accounting for the full measure of impairment in her right knee—including the reduced range of motion and decreased stability findings, as well as the surgical and chronic condition values—because her compensable work injury was a material contributing cause of her impairment as a whole. In response, SAIF argued that *Caren* did not control because that case involved apportionment and a combined condition, two attributes that are not present on the facts in claimant's case. Instead, in SAIF's view, claimant suffered from separate findings of loss caused entirely by a noncompensable condition and

the non-work-related cause—degenerative changes, body habitus, or preexisting osteoarthritis—differently. There is no need for us to address that difference.

claimant was not entitled to compensation for those findings of loss because they did not meet the statutory definition of "impairment."

Acknowledging that *Caren* did not directly answer the question presented, but nonetheless relying on guidance provided by this court in that case, the Court of Appeals explained that claimant was entitled to an award accounting for the full measure of impairment in the entirety of her right knee because her work injury was a material contributing cause of her impairment "as a whole." *Robinette*, 307 Or App at 16. The Court of Appeals considered this court's reasoning in *Caren* to be relevant in claimant's case, explaining that "[i]f the employer intends to assert that a portion of the claimant's impairment is not related to the work injury, the employer is required to issue a preclosure denial of the condition giving rise to the impairment" before "the employer is entitled to a reduction in impairment benefits for the portion of the impairment that is attributable to a cognizable preexisting condition." *Id.* Because the condition that caused the range of motion and stability impairment had not been specifically denied, the Court of Appeals reversed, holding that claimant was entitled to compensation for those findings. *Id.*

SAIF petitioned for review of that decision, arguing that the Court of Appeals incorrectly interpreted the meaning of "impairment" in ORS 656.214. SAIF contended that claimant should not receive an award for findings of loss that are attributed entirely to conditions that are unrelated to the accepted compensable injury. Specifically, SAIF reasoned that claimant should not receive an award of permanent partial disability for the reduced range of motion and decreased stability findings in her right knee because those were not related to the compensable injury. In SAIF's view, ORS 656.214 and the surrounding statutes that govern awards for permanent partial disability clearly demonstrate that findings of loss that are unrelated to the compensable injury do not qualify as impairment. We allowed review to consider whether the definition of "impairment" within ORS 656.214(1)(a) includes findings of loss that are not at all related to, or caused by, the compensable injury.

## II.   ANALYSIS

As explained above, the workers' compensation statutes provide for a specific process that must be adhered to following a workplace injury. When an accepted, compensable injury becomes medically stationary, then the insurer or self-insured employer calculates the amount of disability benefits due to the claimant. *See generally* ORS 656.262(7)(c) (setting out process for closing a claim). Those disability benefits include benefits for permanent partial disability, if applicable in the case, based on the impairment to the claimant. The primary disagreement between the parties in this case centers around the word "impairment"—"the loss of use or function of a body part or system due to the compensable injury," ORS 656.214—and whether the calculation of permanent partial disability is intended to encompass findings of loss that are entirely unrelated to the accepted, compensable injury.

On review, SAIF contends that loss "due to the compensable injury" includes only findings of loss that stem from the accepted conditions. In its view, any other findings of loss that do not have a causal relationship to the accepted conditions do not qualify as impairment under ORS 656.214 because those findings are not "due to the compensable injury." SAIF contends that neither the workers' compensation statutes, nor the administrative rules interpreting those statutes, support awards for permanent partial disability stemming from findings of loss that are completely unrelated to the accepted conditions. Accordingly, SAIF argues that the Court of Appeals' decision awarding claimant compensation for all of the findings of loss—including value for loss that was entirely caused by a noncompensable condition—is a misinterpretation of this court's decisions and is inconsistent with the workers' compensation statutory scheme.

In response, claimant contends that the statutory definition of "impairment" in ORS 656.214 makes clear that an injured worker is entitled to the "full measure of impairment" for the loss of use or function of a body part or system due to the "compensable injury," including all findings of loss. Claimant argues that "[i]t is the insurer/self-insured

employer's burden of proof to identify what medical condi-
tions, other than the medical conditions caused by the com-
pensable injury, are contributing to impairment in the body
part or systems harmed as a result of the work accident."
In claimant's view, once she established that her claim was
compensable, she was entitled to the full measure of her
loss, including value for the reduced range of motion and
decreased stability findings. Claimant contends that the
Court of Appeals properly determined that claimant was
entitled to compensation for the full extent of loss of use or
function of her knee, including the reduced range of motion
and decreased stability findings.

The dispute in this case presents a question of stat-
utory interpretation. When we are faced with an issue of
statutory construction, as here, we resolve that issue follow-
ing the established statutory interpretation framework laid
out in *PGE v. Bureau of Labor and Industries*, 317 Or 606,
610-12, 859 P2d 1143 (1993), and *State v. Gaines*, 346 Or
160, 171-72, 206 P3d 1042 (2009). In interpreting statutory
provisions, our primary goal is to determine the intent of
the legislature at the time that it enacted the relevant stat-
utes. *See Gaines*, 346 Or at 171 ("This court remains respon-
sible for fashioning rules of statutory interpretation that,
in the court's judgment, best serve the paramount goal of
discerning the legislature's intent."). To determine whether
the legislature intended for injured workers to receive com-
pensation for the full measure of all new loss of use or func-
tion of a body part, even loss of use or function that is wholly
unrelated to the compensable injury, we examine the work-
ers' compensation statutes as a whole and our prior judicial
interpretations of those statutes. *See Caren*, 365 Or at 472
(citing *Brown v. SAIF*, 361 Or 241, 283, 391 P3d 773 (2017)).
With that in mind, we turn to our previous cases discussing
the meaning of "impairment" and the causes that contribute
to it.

This court has construed "impairment" and the
causes that contribute to it on multiple occasions, including
in our recent opinion in *Johnson v. SAIF*, 369 Or 579, 507
P3d 1277 (2022), a case that was consolidated for oral argu-
ment with this one. In *Johnson*, we extensively reviewed

this court's prior judicial interpretations of the meaning of the word "impairment," the causes that contribute to it, and the surrounding statutory framework in the workers' compensation scheme. 369 Or at 590-97. Those cases do not bear repeating here in such extensive detail, but they nonetheless lay out important background principles that will aid in better understanding the parties' arguments before answering the question before us in this case.

In one of the first cases addressing the meaning of "impairment," and the phrase "due to the compensable injury," as used in ORS 656.214, *Barrett v. D & H Drywall*, 300 Or 325, 709 P2d 1083 (1985) (*Barrett I*), *adh'd to on recons*, 300 Or 553, 715 P2d 90 (1986) (*Barrett II*), this court explained the statutorily prescribed standard for determining whether an award for permanent partial disability is appropriate. When an accepted, compensable injury is the material contributing cause of a claimant's impairment, then the claimant is entitled to the full measure of compensation for that entire impairment. *Johnson*, 369 Or at 595. In other words, as we understood the workers' compensation statutory scheme at the time the *Barrett* cases were decided, an injured worker is entitled to compensation for the full measure of new impairment caused by the compensable injury, whether the injured worker suffers greater permanent partial disability because of a preexisting condition or not. *See Barrett I*, 300 Or at 328 ("The oft-expressed maxim still applies: An employer takes the worker as he finds him. Whether the worker suffers greater permanent partial disability *** because of a preexisting condition is irrelevant in deciding the amount of loss of earning capacity caused by a new injury superimposed on a preexisting condition."). The general rule underlying all workers' compensation claims is that a worker is entitled to compensation for impairment that is caused in material part by the compensable injury, even if that impairment is heightened—or different—because of a worker's individual circumstances prior to the injury.

Then, in 1990, the legislature enacted a significant overhaul of the workers' compensation statutory scheme. *See Caren*, 365 Or at 476-77 (discussing the 1990 overhaul of the

workers' compensation statutes in response to this court's decisions in the *Barrett* cases); *see also Brown v. SAIF*, 361 Or 241, 265-66, 391 P3d 773 (2017) (describing the 1990 special session and the overhaul of the workers' compensation statutes that resulted); Or Laws 1990, ch 2, § 3 (Spec Sess) (detailing the changes made during the legislative session). Those legislative changes included the creation of what is now known as the "combined condition" framework. *Caren*, 365 Or at 476-77. The 1990 legislation amended the definition of "compensable injury" to specify that, when an "otherwise compensable injury" combines with a preexisting condition to create a new condition or need for treatment, the combined condition "is compensable only if \*\*\* the otherwise compensable injury is the major contributing cause of the disability of the combined condition or the major contributing cause of the need for treatment of the combined condition." *See* ORS 656.005(7)(a)(B). That amendment altered the material contributing cause standard discussed above by creating a different standard—a *major* contributing cause standard—for combined conditions.

The intent of the legislature in creating the combined condition framework was to enact an exception to the general rule that would allow insurers or self-insured employers to reduce their liability for claims in a limited set of circumstances. *See Caren*, 365 Or at 473 ("[T]he legislature intended the combined condition process to create an exception to the general rule that employers pay compensation for the full measure of the workers' permanent impairment if the impairment as a whole is caused in material part by the compensable injury[.]"). In cases where a legally cognizable preexisting condition—that is, "any injury, disease, congenital abnormality, personality disorder or similar condition that contributes to disability or need for treatment, provided that \*\*\* the worker has been diagnosed with the condition, or has obtained medical services for the symptoms of the condition regardless of diagnosis," ORS 656.005(24)(a)—combines with a compensable injury, the legislature carved out a process through which the insurer can apportion the claimant's permanent partial disability award according to the percentage of the impairment that was caused by the compensable injury. *Caren*, 365 Or at 487. That exception is

limited to circumstances where the insurer or self-insured employer avails itself of the statutory requirements. *See Schleiss v. SAIF*, 354 Or 637, 655, 317 P3d 244 (2013) ("[T]o qualify for the apportionment of impairment, a cause must be legally cognizable."). But, in circumstances where the combined condition framework is not applicable, we have continually confirmed that the general rule remains: Where an accepted, compensable injury is a *material contributing cause* of the claimant's impairment, then the claimant is entitled to the full measure of compensation for that impairment. *Johnson*, 369 Or at 595.

With that background in mind, we turn to resolving the specific issue presented in this case—whether a claimant who establishes that her compensable injury was a material cause of *some* new findings of loss is entitled to compensation for *all* new loss of use or function, even loss findings that are wholly unrelated to the compensable injury. We addressed a parallel, though ultimately different, question in our recent decision in *Johnson*. Understanding that decision, and the differences in the questions presented in that case compared to this one, provides guidance for our decision today.

In *Johnson*, the claimant suffered a hand injury in a work-related incident and SAIF accepted, in part, the workers' compensation claim for her injuries. 369 Or at 583-84. After receiving treatment for her initial injury, the claimant sought treatment for additional pain. *Id.* at 584. Later, during the claim closure process, a medical arbiter determined that the claimant suffered a loss of grip strength that was attributable 50 percent to the accepted compensable conditions and 50 percent to the denied conditions. *Id.* at 585. Based on that information, the Workers' Compensation Board apportioned and reduced the claimant's permanent partial disability award according to the percentage of impairment attributed to the denied condition. *Id.*

We allowed review of that case to consider the extent to which the workers' compensation statutes, and specifically ORS 656.214, require an insurer to award benefits for the full measure of an injured worker's impairment when that impairment is caused, at least in part, by a previously

denied noncompensable condition. We explained that an injured worker is entitled to the full value of an impairment that is due in material part to, and resulting in material part from, the compensable injury, and that apportionment is only appropriate where the employer or insurer follows the statutory process laid out for identifying a combined or consequential condition. *Id.* at 602. Ultimately, we held that the claimant in *Johnson* was entitled to the full measure of her loss of grip strength because that loss had been found to be caused in material part by the compensable injury and the claim did not qualify as a combined condition. *Id.* at 603.

Here, claimant presents a similar argument to the one presented in *Johnson*. In her view, once she established that her workplace injury was compensable, she was entitled to the full measure of all new findings of loss in her right knee—including compensation for the reduced range of motion and decreased stability findings, as well as the surgical and chronic condition values—because her compensable work injury was a material contributing cause to her overall impairment. At first glance, our prior cases, including *Johnson*, appear to support that proposition. After all, we do not understand either party in this case to be contending that the reduced range of motion and decreased stability findings represent a combining of claimant's workplace injury with any preexisting condition.[3] Without a combined condition, claimant is correct that she is entitled to the full measure of her impairment that is due, in material part, to the compensable injury. We have reaffirmed that principle

---

[3] Even if either party were to assert that the range of motion and stability findings represent a combining of the workplace injury and claimant's preexisting body habitus, a claim that neither party appears to make here, the alleged "combined condition" would still not qualify for apportionment because it was never previously identified and considered following the statutory process laid out by the legislature. As we have explained before, we understand the requirement that there be a preclosure denial of the preexisting condition as a way of ensuring that the injured worker had notice and an opportunity to challenge a denied claim. *See Caren*, 365 Or at 486 ("The legislature created a process that guarantees sufficient notice because the process requires a written denial of a 'combined condition' before the employer reduces the impairment to account for a preexisting condition, and we conclude that the legislature intended employers to follow that process to obtain the benefit of that reduction."). We do not need to examine whether this situation would have qualified as a combined condition claim, as we do not understand the parties to make that argument, but we note that, as we understand the record here, there was no preclosure denial issued.

many times before. *See, e.g.*, *Barrett II*, 300 Or at 555-56; *Johnson*, 369 Or at 603. But those cases do not implicate the same question that is before this court here.

Directly comparing this case to our recent decision in *Johnson* reveals why this case necessitates a different result under the workers' compensation statutes. Unlike *Johnson*, this case does not involve a situation where the loss of use or function at issue was caused in material part by the compensable injury, but also had other contributing causes. As explained above, the permanent partial disability award at issue in *Johnson* was initially reduced according to the portion of the claimant's impairment that the medical arbiter determined to be related to a specifically denied condition. On review, we reversed the apportionment of the claimant's award, holding that the claimant in that case was entitled to compensation for the full measure of that impairment because the compensable injury was a material contributing cause. *Johnson*, 369 Or at 603. Here, however, multiple distinct losses of use or function are at issue, and, based on the evidence in the record and the ALJ's findings, no part of the claimant's reduced range of motion or decreased stability findings could be attributed to the accepted condition. That is the key fact that differentiates this case from our prior cases.

ORS 656.214 makes clear that "impairment" is "the loss of use or function of a body part or system due to the compensable industrial injury or occupational disease." There is no dispute here that claimant suffered impairment and that *some* of the loss of use or function of her right knee was caused by the compensable injury. Claimant received a permanent partial disability award of five percent whole person impairment for the surgical value and the chronic condition in her right knee because those were caused, in material part (if not in whole), by the compensable injury. Those impairment findings are not in dispute. But claimant's reduced range of motion and decreased stability in the same knee are separate and distinct forms of loss of use or function. To qualify as "impairment," such that a claimant is entitled to a value for that loss as part of their permanent partial disability award, there are two requirements: (1) that there is a loss of use or function of the body part or

system, and (2) that that loss is "due to the compensable injury." ORS 656.214. Under that definition, a result of an injury may be a loss of use or function to an injured worker's body part, but that does not mean that all loss of use or function of the body part will qualify as impairment for purposes of calculating permanent partial disability because "impairment" only includes loss of use or function that is "due to the compensable injury."

Claimant's reduced range of motion and decreased stability findings are a loss of use or function of her right knee. But those losses fail to qualify as "impairment." Review of the medical arbiter's determination and the record makes clear that claimant's reduced range of motion and decreased stability in her right knee was not caused in material part, or in any part, by the compensable injury.[4] Accordingly, those separate and distinct findings of loss of use or function of claimant's right knee are not "impairment" under ORS 656.214 and are not part of the calculation of claimant's permanent partial disability award.

The workers' compensation statutory structure is designed in such a way that the injured worker has the burden of proving the nature and extent of any disability resulting from the workplace injury. ORS 656.266(1). Claimant did not meet that burden here with regard to the loss of use or function of her right knee exhibited through the reduced range of motion and decreased stability. Claimant did not establish a connection between those findings of loss and the work-related injury. Although claimant was awarded

---

[4] As a conceptual matter, we acknowledge that it is difficult to understand how claimant suffered new loss of use or function—the reduced range of motion and decreased stability—in her right knee following a workplace injury but that the workplace injury did not contribute to that loss in any way at all. Nonetheless, those are the findings of the medical arbiter, and those findings were adopted by the Workers' Compensation Board in its final order. The administrative rules governing workers' compensation in Oregon make clear that, "when a medical arbiter is used, impairment is established based on objective findings of the medical arbiter, except where a preponderance of the medical evidence demonstrates that different findings by the attending physician are more accurate and should be used." OAR 436-035-0007(5). It is not our place to set aside the factual finding that claimant's reduced range of motion and decreased stability were not caused at all by the compensable industrial injury, particularly so because those findings were made by a qualified medical professional, following the procedures in the workers' compensation statutes and the accompanying administrative rules interpreting those statutes, and were adopted by the board in its final order.

impairment for the surgical value and the chronic condition, both of which were found to have been materially caused by the workplace injury, the medical arbiter determined that the reduced range of motion and decreased stability were not related. Establishing that an injured worker has suffered impairment does not automatically establish that the injured worker is entitled to compensation for all new findings of loss. Each distinct loss of use or function is still subject to the material cause standard and, ultimately, claimant bears the burden of establishing the causal connection between the loss findings and the compensable workplace injury in order to qualify that loss as "impairment" for purposes of calculating permanent partial disability. To hold otherwise would lead to results that do not comport with the "due to the compensable injury" wording in the definition of "impairment" in ORS 656.214 and could lead to arbitrary outcomes.

An example provided in the briefing of *amici curiae* Oregon Business & Industry (OBI) and Providence Health & Services writing in support of SAIF and the employer in this case, is illustrative on this point. As OBI and Providence point out, the knee is a part of a larger bodily system—the leg. There are various different types of loss of use or function of the leg, or parts of the leg, that could give rise to permanent partial disability awards following injury to a knee. Consider, for instance, reduced range of motion and leg length discrepancies. Those are separate and distinct conditions that could give rise to different loss of use or function of the leg. The process for rating permanent partial disability awards for findings of loss related to those conditions are laid out separately in the administrative rules. *See* OAR 436-035-0220(1) (prescribing how to calculate ratings of loss for reduced range of motion in the knee); OAR 436-035-0230(2) (prescribing how to calculate ratings of loss for leg length discrepancies and specifically excluding loss due to reduced range of motion). It is entirely possible that a worker may have reduced range of motion due to a knee injury, and also have a previously untreated leg length discrepancy caused by a congenital defect. We see no reason in the statutory language or the legislative history to suggest that those two entirely distinct conditions—separate "loss

of use or function"—should be considered a single "impairment" for the purposes of calculating an award of permanent partial disability. Doing so would be at odds with the legislature's goal of creating a workers' compensation system that provides compensation to injured workers for "those injuries that bear a sufficient relationship to employment to merit incorporation of their costs into the stream of commerce." *See* ORS 656.012 (announcing specific legislative findings and policy objectives related to the workers' compensation statutory structure). Instead, focusing on each distinct "loss of use or function"—and separately applying the material cause standard to determine whether that "loss of use or function" is "due to the compensable injury"—will properly provide compensation to claimants who meet the burden of establishing the connection between each loss of use or function and the workplace injury, and will protect insurers and self-insured employers from paying for wholly unrelated conditions.

## III.   CONCLUSION

Here, claimant suffered from reduced range of motion and decreased stability in her right knee following a workplace incident. A medical arbiter, however, attributed those findings entirely to either body habitus or preexisting osteoarthritis, but not at all to the workplace injury. Because each finding of loss of use or function is to be considered separately, and because the workplace injury was not a material contributing cause of either of those loss findings, claimant was not entitled to a value for those findings in her award for permanent partial disability.

The decision of the Court of Appeals is reversed. The order of the Workers' Compensation Board is affirmed.